**ADDRESSOGRAPH–MULTIGRAPH CORPORATION v. UNITED STATES.**

No. 46723.

Court of Claims.

June 1, 1948.

Leo H. Hoffman, of New York City, for plaintiff.

John A. Rus, of Washington, D. C., and Theron Lamar Caudle, Asst. Atty. Gen. (Andrew D. Sharpe and A. F. Prescott, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges.

HOWELL, Judge.

In this case we are asked to decide whether an amendment made after the Statute of Limitations has run to a pending claim for refund of taxes filed in time is of such a nature as to permit the taxpayer to recover an admitted overpayment of taxes.

At all times material hereto plaintiff was and still is a Delaware corporation with its principal office and place of business in Cleveland, Ohio.

On or about March 15, 1930, and March 14, 1931, plaintiff filed federal income tax returns for the calendar years 1929 and 1930, respectively. The return for 1929 showed a total income tax of $147,456.82 which was paid in quarterly installments, $36,864.21 on March 15, and on June 14, 1930, and $36,864.20 on September 15 and December 15, 1930. An additional tax of $657.77 was paid on November 14, 1931. The 1930 return showed a total tax of $164,854.24 which plaintiff paid in quarterly installments of $41,213.56 on March 14, June 15, September 15, and December 14, 1931.

On March 9, 1932, plaintiff filed formal claims for refund for the calendar years 1929 and 1930 in the respective amounts of $9,585.52, and $12,678.84. In each of the refund claims and as one ground for recovery, plaintiff asked for additional depreciation on cost values to the corporation of plant properties based upon an appraisal at June 30, 1927, the date of a reorganization or change of ownership referred to in each claim.

On December 9, 1932, plaintiff filed further timely claims for refund for 1929 and 1930, which were identical with those previously filed but included a new paragraph, reading:

"D. Depreciation included in the original return was inadequate for the reason that erroneous values of depreciable assets were used for computation of depreciation. Furthermore, the depreciation rates used, on many of these assets were too low, and also through an error, some of our assets were entirely omitted for the purpose of this computation and therefore no depreciation was taken thereon."

After March 9 but before December 9, 1932, a Revenue Agent examined plaintiff's books, records, and returns for the years 1929 and 1930 in connection with the claims for refund filed March 9, 1932. This Agent prepared a report dated September 22, 1932, recommending overassessments for 1929 and 1930 which were accepted by the plaintiff as correct. These overassessments were determined upon the basis of the ground set out in the claims filed March 9, 1932, namely, that depreciation should be computed on cost values as shown by an appraisal at June 30, 1927. The Commissioner of Internal Revenue refused to accept the recommendation of the Revenue Agent with respect to the basis for depreciation and on October 24, 1935, advised plaintiff of the reasons for such refusal.

On April 19, 1939, the Revenue Agent made further examination of plaintiff's returns, books, and records for the years 1929 to 1933 and made a report showing deficiencies for each of the years 1929 and 1930. In computing such deficiencies, the Agent did not allow as deductions for the year 1929 these items:

(1) Leasehold Improvements ................ $215.58
(2) Engineering Expense .................... 36,405.67

and did not allow these items as deductions for the year 1930:

(1) Defalcation Restaurant ................. $4,087.10
(2) Leasehold Amortization ................. 431.16
(3) Engineering Expense .................... 79,201.84

An allowance of the two items as proper deductions for the year 1929 would have shown an overpayment of $856.61 in tax

and $62.75 in interest. An allowance of the three items as deductions for the year 1930 would similarly have produced an overpayment of $8,157.05 in tax. No refunds were allowed for the years 1929 and 1930 for the reason that the Commissioner of Internal Revenue maintained that timely claims for refund had not been filed, which included the items just referred to.

In the report of the Revenue Agent referred to in the paragraph next above there appeared the following explanation of reasons for the allowance of an additional deduction for engineering expense:

"(d) The company made a practice of deferring its engineering expenses incurred in connection with the yearly creation of new models. This expense, beginning with a year prior to this examination, was prorated over a period of from five to eight years and was based on the selling life of the models. During this period of years therefore, the amounts deducted on the returns were not the actual expenses of the years but a prorated amount. In the year 1934, by order of the Board of Directors, this practice was stopped and the actual amount incurred each year was taken as a deduction. The unauthorized balance was charged to surplus. For tax purposes, however, the company continued to take a prorated part of the unamortized balance on its tax returns for the year following 1933. Those deductions have been disallowed in accordance with Article 43–2, Reg. 94. In view of this Article, the actual expenses of each year were allowed."

The item "Engineering Expense," referred to above, arose in the following manner:

During the years 1929, 1930, and for some years thereafter, plaintiff made expenditures for the development of various machines, special attachments, etc., which it treated as capital items with an estimated life of eight years. These expenditures included the cost of models used in connection with applications for patents, development expenses subsequent to the filing of a patent application, and the salaries of engineers in carrying out this work, the largest portion of the total expenditure being represented by the last item. All of these expenditures were en-

tered in an account on plaintiff's books entitled "Expenditures on New Products, Engineering Department." At the end of each calendar year the items in the account were all reviewed and a segregation made to distinguish between those considered to be ordinary expense and those considered to be of a capital nature. The former were charged to the current year's expenses and the latter were deferred and written off or amortized over a period of eight years as shown in the last mentioned Revenue Agent's report.

The approximate total of the entries in that account for each of the years 1929 and 1930 was $150,000. After that account was analyzed for the purpose of making an allocation between expense and capital items, the balance remaining was carried as a deferred capital asset account of which no part was charged to the cost of any patent. In its income tax returns, plaintiff claimed one-eighth of that deferred item as a deduction from gross income over a period of eight years.

On April 2, 1941, plaintiff filed two documents on Form 843 which were denominated "Amendatory and Supplementary Claims for 1929 and 1930" in the respective amounts of $31,585.52 and $34,678.84. The claim for 1929 contained the following statement:

"This claim amends and supplements two claims for refund heretofore filed for the calendar year 1929, one dated March 9, 1932 and filed with the Collector of Internal Revenue, Cleveland, Ohio on that date and the other dated December 9, 1932, and filed with said Collector on that date."

The claim for 1930 contains an identical statement except for the use of the year 1930 instead of 1929. These amendatory and supplementary claims incorporated by reference the claims for refund referred to in Findings 3 and 4 as well as various briefs and letters to the Commissioner. In stating the amount to be refunded as indicated above, there was added the phrase "or such greater amount as is legally refundable."

The amendatory claim for 1929 set out among others the following ground for refund:

"The field agent, Harold Perdue, in his report dated April 1939, has reduced income by engineering expenditures of $36,405.67. It is the taxpayer's position that this adjustment is improper. However, to protect its rights, refund is claimed for the overpayment in taxes resulting should the field agent be sustained in this adjustment."

The same statement appears in the claim for 1930 except that the amount of the engineering expenditures is shown as $79,201.84.

On June 7, 1941, the Commissioner rejected the claims for refund for 1929 and 1930 which were filed on March 9 and December 9, 1932, as stated above. On November 10, 1942, the amendatory claims for 1929 and 1930 which were filed April 2, 1941, were rejected by the Commissioner for the stated reason that they were not filed within the period of limitation prescribed by law. A communication by the Revenue Agent in Charge to plaintiff dated December 8, 1941, transmitted a copy of a report dated November 26, 1941, recommending rejection of the claims with the following explanation:

"The taxpayer filed an amendatory and supplementary claims for refund for the taxable years ended December 31, 1929, and December 31, 1930. These claims were filed April 2, 1941, and not only incorporate the additional depreciation claimed in original report, but new adjustments developed by field examinations.

"The original claim for refund was rejected in Department IT:CI:C.C.4–C.C.P. dated.6/7/41, as a result of a field examination.

"In accordance with the decision of the Supreme Court on Mabel S. Andrews, Executrix, 1938–4–a., 60 CT. D. 1300 C. B. 1938–1, page 322, the amendatory and supplementary claim filed April 2, 1941, is rejected. This decision is stated in substance as follows:

" 'A claim for refund of a definite amount based upon a specific ground is not susceptible of amendment before rejection by the filing of a second claim, after the expiration of the statue of limitations, to recover a greater sum on a new and unrelated ground.'

"The amendatory claims fall definitely within the purview of the above decision. The commissioner is, therefore, without power to consider the claims."

In February 1943, plaintiff and the Commissioner of Internal Revenue entered into a written agreement, pursuant to Section 3774 (b) (2) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 3774 (b) (2), to suspend the statute of limitations for bringing suit on the claims for refund for 1929 and 1930 which were disallowed by the Commissioner on June 7, 1941.

Additional facts show that the same Revenue Agent who had made the report recommending adjustments which produced overpayments for the years 1929 and 1930, as stated above, also made similar adjustments on account of the item of "Engineering Expense" for the years 1931, 1932 and 1933. On May 5, 1939, he made a report recommending deficiencies for the years 1934 to 1937, inclusive, with similar adjustments for the item of "Engineering Expense." Revenue Agents also made the same adjustments for 1938 and subsequent years. Upon the basis of the Agents' reports for the years 1934 to 1938, inclusive, deficiencies were determined against plaintiff from which it appealed to the United States Board of Tax Appeals. The disallowance of deductions for amortization of the unamortized balance of engineering expenditures on plaintiff's books at January 1, 1934, aggregating $338,237.96 for plaintiff and its affiliated companies, increased plaintiff's income for the years 1934 to 1938, inclusive, which was one of the many errors assigned by plaintiff in its petitions to the Board. In decisions promulgated February 5, 1945, by the Tax Court (formerly United States Board of Tax Appeals) the Commissioner's treatment of the item of engineering expense was sustained in principle. The tax court found deficiencies which plaintiff paid. Final orders and decisions in the Tax Court proceedings were entered on May 23, June 16, and June 18, 1945.

On the basis of the Tax Court's findings of fact and decisions, deductions for engineering expenses for 1929 and 1930 in addition to those set out in the Revenue Agent's report of April 19, 1939, would be

allowable in the sum of $1,638.18 for 1929 and $18,964.33 for 1930.

While the original petition in this proceeding was pending before this Court, plaintiff filed claims for refund for 1934, 1935, 1936, 1937 and 1938, and in each claim sought the recovery of overpayments for 1929 and 1930 of $1,673.92 and $10,341.93, respectively, by way of equitable recoupment from the deficiencies paid for 1934 and 1938, inclusive. Thereafter, plaintiff filed an amended petition to set up this additional ground of equitable recoupment. No action has been taken by the Commissioner on these claims.

Thus the principal issue is whether or not the action of the Commissioner of Internal Revenue of November 10, 1942, in rejecting the amendatory claims for 1929 and 1930 which were filed on April 2, 1941, was proper. In the letter of the revenue agent in charge to plaintiff, dated December 8, 1941, recommending rejection of the claims, the decision of the Supreme Court in United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398, was set out as the basis upon which the ruling was made and the following summation of language of the Supreme Court used:

"A claim for refund of a definite amount based upon a specific ground is not susceptible of amendment before rejection by the filing of a second claim, after the expiration of the statute of limitation, to recover a greater sum on a new and unrelated ground."

The main argument before us concerns the specific issue as to whether the amendatory and supplementary claims were proper and germane.

In that connection it is interesting to note that both the defendant and the plaintiff rely upon the same authorities to sustain their respective views of this case.

■ Without reviewing all of the cited authorities, it is well to note the statement of the rule which was set out in the case of Pink v. United States, 2 Cir., 1939, 105 F.2d 183, 187,

"Whether a new ground of recovery may be introduced after the statute has run by amending a pending claim filed in time depends upon the facts which an investiga-

tion of the original claim would disclose. Where the facts upon which the amendment is based would necessarily have been ascertained by the commissioner in determining the merits of the original claim, the amendment is proper. Bemis Bro. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633. The rule is otherwise when the amendment requires the examination of new matters which would not have been disclosed by an investigation of the original claim. United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405; Marks v. United States, 2 Cir., 98 F.2d 564."

This court has had occasion to review the Pink case in two recent cases, the first of which was Insurancshares & General Management Co. v. United States, 1940, 38 F.Supp. 835, 842, 93 Ct.Cl. 643, 658, wherein the court had this to say:

"The language of the Court in Pink v. United States, 2 Cir., 105 F.2d 183, 187, relied upon by plaintiff, gives it no aid in this case. The court there said that where the original claim filed is such that the facts upon which the amendment is based would necessarily have been ascertained by the Commissioner in investigating the merits of the original claim, the amendment may be made after the statute has run. Here the investigation of the timely claim as to the nontaxability of dividends of domestic corporations would not lead the Commissioner to suspect that the plaintiff had done the unusual thing of including 1927 income in its 1928 return. * * * *"

In a later case, Cochran v. United States, 62 F.Supp. 872, 105 Ct.Cl. 628, this court held otherwise in connection with an amended claim and found that under the circumstances the claim under consideration was properly susceptible to amendment in the way in which the plaintiff did amend it, and permitted recovery thereon.

■ Therefore we must turn to a consideration of the facts and circumstances in this particular case to determine wheth-

er this amended claim is appropriate and adequate to justify the allowance of a refund for the admitted overpayment of taxes.

The timely claims filed March 9, 1932, as well as the further claim filed December 9, 1932, involved a consideration of "depreciation." The revenue agent in his examination of plaintiff's returns, books and records for the years 1929–1933, and his reports showing deficiencies for each of the years 1929–1930, did not allow as deductions the principal item of engineering expense for either of the two years. Furthermore, in his investigation of the original claim for refund filed in 1932 involving "depreciation" the representative of the Commissioner of Internal Revenue discovered or "developed," in his own language, the method of treatment of the item of "Engineering Expense."

In the amendatory and supplementary claims of 1941 the plaintiff referred to the method of the field agent in dealing with this item. A consideration of the manner in which the item "Engineering Expense" arose has been previously described in this opinion. From that it will be seen that this expenditure included the cost of models in connection with application for patents, development expenses subsequent to the filing of a patent application, and the salaries of engineers in carrying out this work.

It is interesting to note Article 208 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, as follows:

"Art. 208. *Depreciation of drawings and models.*—Where a taxpayer has incurred expenditures in his business for designs, drawings, patterns, models, or work of an experimental nature calculated to result in improvement of his facilities or his product, if the period of usefulness of any such asset may be estimated from experience with reasonable accuracy, it may be the subject of *depreciation allowances* spread over such estimated period of usefulness. The facts must be fully shown in the return or prior thereto to the satisfaction of the Commissioner. Except for such *depreciation allowances* no deduction shall be made by the taxpayer against any sum so set up as an asset except on the sale or other disposition of such asset at a loss or on proof of a total loss thereof." [Italics supplied.]

In dealing with this item the report of the revenue agent referred to above explained the reasons for denying relief in language closely resembling that used in Article 208 of the Treasury Regulations, to wit:

"The company made a practice of deferring its engineering expenses incurred in connection with the yearly creation of new models. * * *"

The Treasury Regulation begins with this language:

"Where a taxpayer has incurred expenditures in his business for designs, drawings, patterns, models * * *".

While the distinction between "depreciation" and "amortization" has not been noted, it is well to point out in passing that there is a marked one.[1] However, in the consideration of the item involved here, it would seem that any investigation involving the values of depreciable assets, the rates of depreciation or the omission of depreciable assets would have necessarily involved a consideration of the account entitled "Expenditures on New Products, Engineering Department." As a matter of fact, the very title of the account was such as to direct the attention of any investigating agent to it, having in mind Article 208 of Treasury Regulations 74 dealing with "Depreciation of Drawings and Models."

Under these circumstances we must conclude that the amendment merely made more definite the matters already within the knowledge of the Commissioner, which

---

[1] Amortization is the provision for the gradual extinction of (a future obligation) in advance of maturity, either by an annual charge against capital account, or, more specifically, by periodic contributions to a sinking fund which will be adequate to discharge a debt or make a replacement when it becomes necessary.

Depreciation is the decline in value of an asset due to such causes as wear and tear, action of the elements, obsolescency and inadequacy.

in the course of his investigation he actually did ascertain.

The item of "Engineering Expense" did not involve a "new and unrelated ground," but bore a very close relation to the timely claims. The amendments therefore were proper and germane, and the plaintiff is accordingly entitled to recover upon the allowance of additional deductions for 1929 and 1930 in the respective amounts of $38,043.85 and $98,166.17.

The entry of judgment will be suspended to await the filing of computations or a stipulation of the parties showing the correct amount due plaintiff computed in accordance with this opinion.

It is so ordered.

JONES, Chief Justice, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.