**MOBIL CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 94–421T.

United States Court of Federal Claims.

April 12, 2002.

Felix B. Laughlin, Dewey Ballantine LLP, Washington, D.C., for plaintiff. Gerald A. Kafka, of counsel.

W.C. Rapp, U.S. Department of Justice, with whom were Loretta C. Argrett, Assistant Attorney General, and Mildred L. Seidman, Chief, Washington, D.C., for defendant.

## OPINION

HODGES, Judge.

Mobil Corporation sues to recover interest it allegedly overpaid for tax years 1974 and 1975 in the amounts of $817,531 and $628,645 respectively. Plaintiff contends that the Internal Revenue Service (IRS) calculated the deficiency interest that plaintiff owed, using a method inconsistent with its long-standing practice for calculating such interest. Defendant argues that plaintiff did not file a claim for refund of the disputed amounts within the applicable statutory time period, and moves to dismiss the complaint for lack of jurisdiction. We grant defendant's motion to dismiss for the reasons set forth below.

## SUMMARY OF OPINION

Defendant's motion to dismiss is based on the requirement that a taxpayer file for a refund within three years from the time a return is filed or two years from the time the tax is paid, whichever is later. The claim "must set forth in detail each ground upon which a credit or refund is claimed ...." Plaintiff filed a timely claim for refund of taxes overpaid and made a claim for interest on the overpayment, but its current claim disputes the manner in which the interest was calculated. It did not include that specific argument in the original claim.

The facts material to resolving defendant's motion to dismiss for lack of jurisdiction are not in dispute. This case involves two tax years, but the issues are identical. We address tax year 1974.

Plaintiff filed its 1974 tax return in September 1975. Four years later, it filed an amended return to reverse a deduction on its 1974 return. This reversal resulted in additional taxes of nearly $28 million for 1974. IRS assessed the $28 million plus about $9 million in interest. Plaintiff paid the entire amount in July 1981.

IRS made an unrelated assessment of approximately $70 million for 1974 in 1981, plus $36 million in deficiency interest. Plaintiff paid this amount in August 1981, then filed claims for refunds in 1981 and 1983 alleging that it had been over-assessed taxes for 1974 by $110 million. IRS refunded $9 million in taxes and $29 million in interest in September 1990, based on that claim.

The central issue of this case arose in the Spring of 1992. Plaintiff asked that IRS recalculate the $36 million interest deficiency that had been assessed in 1981 because IRS used an improper method for computing interest on the $27.7 million that it owed for 1974. The method that IRS should have used was referred to as "recomputing the account module," known as RAM. That procedure no longer is used, but essentially it meant that payments by a taxpayer would be

allocated first to taxes due and then to accrued interest. If IRS had applied plaintiff's payments first to taxes due, its overall obligation would be about $817,000 less for 1974. RAM is explained in greater detail below.[1]

■ Defendant argues that plaintiff did not raise the calculation issue in a timely manner, irrespective of its merits. Treasury Regulations provide that a claim "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise [IRS] of the exact basis thereof." Treas. Reg. 301.6402–2(b).[2] The requirement that a claim for refund be argued specifically before expiration of the applicable limitations period is known as the Doctrine of Variance. Defendant acknowledges that plaintiff asked for interest on the taxes that it overpaid in its original claim, and generally cases hold that interest is a component of the refund. Now, however, plaintiff contests the *method* that IRS used to calculate the amount of interest that plaintiff owed. Even if IRS mistakenly did not calculate interest using normal administrative procedures, contesting the *method* of calculation was a new claim. Plaintiff was required to bring that error to the Commissioner's attention.

Plaintiff contends that IRS had adequate information to understand that its method of calculation was improper; the Commissioner must have noticed the miscalculation in the process of addressing the claim for refund. Defendant responds that the basis for all claims must be set out in detail so that the Commissioner may address each theory.

■ Plaintiff argues that it did raise the calculation method issue as an "informal claim" in 1992. According to the Informal Claims Doctrine, a taxpayer may raise an issue in any manner that brings it to the attention of IRS. IRS does not dispute that plaintiff discussed the computation issue informally in the Spring of 1992, but that was after the statutory period for filing had expired. The deadline for either a formal or an informal claim was August 1983.

The Internal Revenue Code permits an amendment to the original claim, even after the limitations period has expired. Plaintiff points out that the interest calculation claim should be considered an amendment to the original claim. An amendment must be "germane" to the original claim, and it must be submitted before IRS has resolved the original claim. Here, the original claim was resolved in 1990.

Finally, plaintiff argues that the Variance Doctrine can be waived, and that IRS' consideration of plaintiff's claim on the merits in 1992 constituted a waiver of that doctrine. A waiver must occur within the time period permitted for filing a refund claim, however, and the Commissioner cannot waive a jurisdictional statute. If IRS waived the Variance Doctrine, it did not do so before 1983.

A claim for refund of taxes implicitly includes a claim for interest on the overpayment, but it does not advise the Commissioner that the taxpayer also has a claim for miscalculation of the interest due. It is reasonable for a taxpayer to suppose that IRS

---

1. Assume that for a particular tax year IRS assessed additional taxes of $100 and $50 in related deficiency interest and the taxpayer paid the resulting $150 assessment. IRS later determined that the taxpayer owed an additional $100 in taxes, meaning that the taxpayer had originally underpaid its taxes by a total of $200 rather than the $100 previously assessed. Applying RAM, IRS would reallocate the taxpayer's previous payment of $150 taxes and interest and apply the entire $150 to taxes. IRS' second assessment would now be for unpaid taxes of $50. Deficiency interest would be assessed on the full $200 underpayment from the original tax return to the date on which the taxpayer paid the $150 for the first assessment, and then on the remaining $50 from the date of the $150 payment until the date of the second assessment.

Not applying the RAM method, when IRS made the second assessment of $100, it would assess interest on the additional $100 from the date of the original return through the date of the second assessment. In other words, IRS would not apply $50 of the taxpayer's initial $150 payment to the additional $100 assessment. Interest would accrue on the entire $100 until the taxpayer satisfied the second assessment. The taxpayer would pay interest on the entire amount of taxes assessed from the date of the original return until payment in response to the second assessment.

2. All references to the Treasury Regulations can be found in Title 26 of the Code of Federal Regulations. Similarly, the references to the Internal Revenue Code can be found in Title 26 of the U.S.Code. The same section numbers apply.

would calculate interest properly, but the purpose of the regulations is to prevent broad claims in the administrative process that a taxpayer only makes more specific later in litigation.

## I.

Plaintiff filed its 1974 tax return on September 15, 1975, and satisfied the tax due on that return through various payments and credits. It filed an amended return in September 1979 to reverse a deduction that was reported on the 1974 return. As a result of this reversal, plaintiff owed approximately $27.7 million in additional taxes for tax year 1974. Plaintiff included with its amended return a check covering the entire $27.7 million in overdue taxes.

After receiving plaintiff's amended return, IRS issued an assessment for $9 million in accrued interest on the $27.7 million. Plaintiff paid the assessed interest. Then in July 1981, IRS made a separate and unrelated assessment in the amount of $70 million in additional taxes and $36 million in accrued interest for tax year 1974. Plaintiff paid this assessment on August 6, 1981.

Plaintiff filed a Form 1120X "Amended U.S. Corporation Income Tax Return" in September 1981, alleging that it had overpaid its 1974 taxes by approximately $110 million. On June 12, 1990, plaintiff filed the necessary forms to settle the claim, including a Form 906 "Closing Agreement on Final Determination Covering Specific Matters." IRS paid plaintiff a refund and credits totaling approximately $38 million in taxes and interest in September 1990.

In the Spring of 1992, plaintiff asked that IRS recalculate the deficiency interest that it had assessed for tax year 1974. The parties had a number of written and oral discussions about plaintiff's request, and IRS denied it by a Technical Advice Memorandum (TAM) issued on July 9, 1993. IRS issued a revised TAM in September 1993, also adverse to plaintiff. Plaintiff filed this complaint in

June 1994 to recover $817,531 in interest allegedly overpaid for tax year 1974.

## II.

The $817,531 that plaintiff seeks to recover for tax year 1974 is the amount that it claims to have overpaid because IRS calculated the interest on its $70 million assessment improperly. This is a part of $36 million in deficiency interest that IRS assessed in July 1981, and plaintiff paid a month later in August. IRS apparently applied the statutory interest rate to the $70 million that it assessed in overdue taxes, from the date the taxes were due in 1975 through the assessment in July 1981. Plaintiff contends that this method was inconsistent with the standard method IRS generally employed for calculating interest during those years.

RAM was the then-standard method used by IRS for calculating interest. As explained above, using this method IRS would allocate payments of deficiency interest to taxes due. If no taxes remained unpaid, new payments were allocated to accrued interest. IRS charged interest on taxes due but not on interest, so this method benefitted the taxpayer in such circumstances. It changed a portion of the taxpayer's remaining debt from a class that accrues interest to one that does not. That is, from unpaid taxes to unpaid interest. IRS stopped using the RAM method on January 1, 1983 when a statutory change in calculating interest became effective.[3]

Plaintiff argues that IRS should not have calculated interest on the full $70 million assessment from the date of the original return through payment in August 1981. It should have used the RAM method to apply payments to taxes due rather than to past due interest. The July 1981 assessment for taxes would have been less because previous interest payments would have been applied to the $70 million assessment. Calculating interest on the full $70 million cost plaintiff an additional $817,531.[4]

---

**3.** Section 344 of the Tax Equity and Fiscal Responsibility Act of 1982, 1982–2 C.B. 462, 579, replaced section 6601(e)(2) of the Internal Revenue Code with section 6622, which provided for daily compounding of interest. This statutory

change ended the RAM treatment of taxes and interest.

**4.** We accept plaintiff's numbers and other factual assertions as true for the purposes of this motion.

### III.

Defendant's motion to dismiss is based on plaintiff's alleged failure to raise its allegation concerning improper interest calculation in a timely manner. It offers the statutes and regulations referenced below as support for this argument.

I.R.C. § 7422(a) requires that a taxpayer file a claim for refund or credit with the IRS before bringing a tax refund suit in this court. I.R.C. § 7422(a) provides:

> No suit prior to filing claim for refund. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

I.R.C. § 6511(a) establishes limitations periods for filing such a claim, as follows:

> Period of limitation on filing claim. Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid . . . .

I.R.C. § 6511(b) bars a refund or credit unless a timely claim is presented to IRS.

> (1) Filing of claim within prescribed period. No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

Claims for refund of deficiency interest are subject to the same I.R.C. § 6511 limitations as claims for the underlying tax. *Alexander Proudfoot Co. v. United States*, 197 Ct.Cl. 219, 454 F.2d 1379 (1972). A plaintiff must file a claim for refund "according to the provisions of law . . . and the regulations of the [IRS]" before suing in this court. I.R.C. § 7422(a).

Plaintiff did file a claim for refund "within . . . 2 years from the time the tax was paid" in August 1981. The claim for refund was filed on September 14, 1981 and amended on July 22, 1983. Defendant contends that this claim cannot support plaintiff's suit in this court because it did not comply with applicable "regulations of the Secretary." *See* I.R.C. § 7422(a).

Treas. Reg. § 301.6402–2(b) provides:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim *must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.* The statement of the grounds and facts must be verified by a written declaration that is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit (emphasis added).

The requirement that a refund may be allowed only upon the grounds specified in the claim presented to the IRS has given rise to the "Doctrine of Variance." That doctrine provides that "a ground for a refund that is neither specifically raised by a timely claim for a refund, nor comprised within the general language of the claim, cannot be considered by a court in a subsequent suit for a refund." *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed.Cir.1983) (citations omitted).

Taxpayers are barred from substantially varying either the factual basis or the legal basis of any claim for refund that may have been presented. *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed.Cir. 2000) ("With regard to the legal component of the substantial variance rule, any legal

theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated. The taxpayer similarly may not substantially vary at trial the factual bases raised in the refund claims presented to the IRS.")(internal quotation marks and citations omitted).

Defendant contends that the complaint must be dismissed because plaintiff did not file a timely claim for refund asserting that IRS failed to recompute the account module in determining the amount of interest that plaintiff owed. The rule of substantial variance is a jurisdictional prerequisite. *Ottawa Silica Co.,* 699 F.2d at 1139. Plaintiff responds with a series of arguments.

## IV.

### A. IRS was on Notice

■ Plaintiff argues that its September 14, 1981 claim for refund provided the IRS with sufficient information about its claim to satisfy Treas. Reg. § 301.6402–2(b) and to support this suit. We cannot agree. The claim provides adequate information with respect to plaintiff's contention that it overpaid taxes by approximately $110 million, but it does not set forth a separate ground for recovery of interest. The September 1981 claim separately lists each adjustment affecting income and credits that support plaintiff's claim that it overpaid taxes by $110 million. This list includes capital gains and losses from the sale of numerous specified assets, depletion costs, intangible drilling costs, and a write-off for worthless mineral assets. Plaintiff evidently knew that it was important to articulate each ground upon which its claim for refund of taxes was based.

Plaintiff's detailed request for a refund of taxes adds, "plus interest on such amount or such greater amount of tax and interest as may be legally refundable on such taxes and interest." This does not set forth the particular ground upon which plaintiff relies to support this suit. The notation alone amounts to nothing more than a plea for all payments to which plaintiff is legally entitled. It does not satisfy the requirement that the taxpayer "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1).

The Supreme Court rejected a taxpayer's reliance on a similar broadly worded request in *United States v. Andrews,* 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398 (1938). The taxpayer claimed a refund for two specific items of deduction "or any greater sum which might be ascertained to be due." *Id.* at 524, 58 S.Ct. 315. After the statutory period for raising new claims had expired, the taxpayer requested a refund for that same tax year because another item was mis-classified as a dividend. The Court rejected this attempted amendment as untimely because it was not encompassed within the request for refund in the original claim.

Plaintiff provided a detailed explanation of its $110 million refund claim, but it made only a "catch-all" request for interest. This language does not encompass the refund claim that plaintiff brings to court. The only explanation of a claim for the recovery of deficiency interest in plaintiff's September 14, 1981 claim is the following statement in Attachment III:

*Interest Paid on Taxes Paid Above*

| | |
|---|---:|
| Imposition of interest with respect to underpayment of estimated tax due on March 17, 1975 | 6,256.02 |
| Paid on November 10, 1980 with respect to payment made on September 14, 1979 | 8,529,723.72 |
| Paid with respect to payment made on August 6, 1981 | 35,780,249.40 |
| Interest to be refunded on 1974 Refund Claim | 44,316,229.14 |

This statement specifies that plaintiff is seeking a $36 million refund of deficiency interest that it paid in August 1981, but it does not suggest that plaintiff is entitled to recover $817,531 of that $36 million on the ground that IRS did not recompute the account module in determining the interest plaintiff owed. In fact, plaintiff was unaware of this ground for recovery when it submitted the claim, according to plaintiff's counsel.

Plaintiff's request for the $36 million refund was interest on the $70 million assessment of additional taxes that it had paid in August 1981 and was contesting. If plaintiff had been entitled to recover the $70 million

that it paid in additional taxes, it would have been entitled to recover the $36 million deficiency interest as well. The $817,531 portion it now seeks because of IRS' alleged miscalculation is based on a separate legal theory that plaintiff was obligated to disclose in its claim.

Plaintiff's September 1981 claim for refund does not suggest to IRS that plaintiff was seeking a refund of $817,531 or any other amount on the ground that IRS miscalculated interest due from plaintiff in its July 1981 assessment. Treas. Reg. § 301.6402–2(b) requires that a claim for refund "set forth in detail each ground upon which a credit or refund is claimed." Plaintiff did not meet this standard.

### B. Claim for Refund Includes Claim for Interest

Plaintiff's next argument is that its claim for interest is included in its claim for refund. While a taxpayer must articulate the specific basis for its claim for overpaid taxes, the same is not true for interest, plaintiff asserts. Yet the law does not support this argument. "No refund or credit will be allowed ... except upon one or more of the grounds set forth in a claim filed before the expiration of [the applicable statutory period of limitation]." Treas. Reg. 301.6402–2(b). The regulation provides no exception for plaintiff's claim for refund based on its alleged overpayment of interest.

The Court of Claims addressed a case in which a taxpayer sued for refund of deficiency interest that it paid erroneously. *Alexander Proudfoot v. United States,* 197 Ct.Cl. 219, 454 F.2d 1379 (1972). The suit did not include a claim for refund of the tax upon which the deficiency interest had been assessed. The court concluded that "the interest demand would be as much governed by § 6511 as the claim for the tax itself, and could not be separated out from the requirement of a proper and timely administrative claim." *Proudfoot,* 454 F.2d at 1382; *see* also *Edinburg v. United States,* 223 Ct.Cl. 1, 617 F.2d 206, 210–11 (1980) (dismissing a petition for refund of interest filed more than two years after IRS' final action on taxpayer's claim for the underlying estate taxes).

The *Proudfoot* court emphasized that the importance of a proper refund claim is "to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." *Proudfoot,* 454 F.2d at 1383 (quoting *Union Pacific R.R. v. United States,* 182 Ct.Cl. 103, 389 F.2d 437, 442 (1968)).

Plaintiff's claim did not raise IRS' alleged failure to recompute the account module when it calculated the deficiency interest plaintiff owed. Thus, it did not give IRS notice of "the nature of the claim." The result was that IRS had no reason to investigate the particular ground for recovery upon which plaintiff now relies.[5]

Plaintiff relies in part upon *Deluxe Check Printers, Inc. v. United States,* 15 Cl.Ct. 175 (1988), *aff'd in part and rev'd in part on unrelated grounds,* 885 F.2d 848 (Fed.Cir. 1989). The taxpayer sought a refund of tax and related deficiency interest. The court denied refund of the tax but allowed a refund of the interest on the ground that the Internal Revenue Code did not allow an assessment of interest on the tax involved. The taxpayer in *Deluxe* did not set forth in its claim the specific independent ground upon which it sought a refund of interest, but the court found that IRS had adequate notice of the claim. The "general grounds" provided in the claim were "broad enough to embrace" the ground upon which the taxpayer relied during litigation. *Id.* at 182.

Assuming that the *Deluxe* court was correct in deciding that the "general grounds" in the claim were broad enough to encompass

---

5. The *Proudfoot* Court addressed a hypothetical situation in which IRS applied the wrong interest rate to underpaid taxes:

Plaintiff suggest that, if the Service happened to impose deficiency interest at 9% rather than the allowable 6% ... the taxpayer could bring 'an independent action not subject to the requirements of a tax refund claim' to recover the excess. We agree, however, with the Government that this is precisely one situation in which Congress would want the Service to have an opportunity to correct its mistake before litigation was begun.

*Proudfoot,* 454 F.2d at 1383 n. 10.

the taxpayer's theory in litigation, such a determination does not control here. Plaintiff did not put IRS on notice of its grounds for relief either implicitly or explicitly. Its claim indicates nothing more than a hope to recover interest paid in response to IRS' July 1981 assessment. Plaintiff did not inform IRS when it filed the claim that it also was contesting the *method* that IRS employed in calculating the interest that it owed on the unpaid taxes.

IRS determined that the $36 million deficiency interest that plaintiff paid should not be refunded. Plaintiff did not suggest that it had an additional, independent ground for recovery. This fact is fatal to plaintiff's claim and to our jurisdiction.

### C. Improper Burden on Taxpayer

Plaintiff contends that placing an obligation on the taxpayer to set forth the precise ground for an interest refund is inconsistent with both I.R.C. § 6611(a) and IRS' instructions to Form 1120X. Internal Revenue Code § 6611(a) provides that interest "shall be allowed and paid upon any overpayment." The instructions for Form 1120X state that "IRS will figure any interest due or owed and will either include it in [the] refund or bill [the taxpayer] for the interest."

■ Section § 6611(a) merely creates a legal obligation to pay interest on an overpayment. It does not specify either the steps a taxpayer must take to enforce such an obligation or the time within which the taxpayer must take those steps. I.R.C. § 6611 also provides for refund of interest that accrues on overpayment of taxes or interest. In such a claim, the taxpayer implicitly requests a refund of interest from IRS.

■ The Form 1120X instructions mean only that IRS will consider refund claims and pay interest on the refunded taxes, if applicable. If a taxpayer is to recover an overpayment of taxes or interest, it is not necessary for the taxpayer to calculate the interest. As the court in *Proudfoot* commented, historically under the tax laws, "deficiency interest has been so closely braided to principal that

it has been deemed an integral part of the tax .... The hair is to go with the hide." *Proudfoot,* 454 F.2d at 1382.

Plaintiff argues that the Form 1120X instructions require IRS to evaluate all potential grounds for a refund regardless of whether the taxpayer reasonably has brought such grounds to its attention. Such an interpretation would place the instructions in direct conflict with Treas. Reg. § 301.6402–2(b), the Variance Doctrine. IRS reviewed plaintiff's claim for refund, determined the amount of tax and deficiency interest to be refunded, then calculated the amount of interest due on that refund. IRS fulfilled the requirements of the instructions that plaintiff cites.

### V.

If its formal claim did not comply with the requirements of Treas. Reg. § 301.6402–2(b), plaintiff argues that the court should recognize its discussions with IRS, both written and oral, concerning the miscalculation of its deficiency interest.[6] IRS knew of plaintiff's concern that IRS had not computed the interest properly, plaintiff contends. Plaintiff brought the issue of interest calculation to IRS' attention for the first time in the Spring of 1992. IRS rejected plaintiff's argument on the merits in a Technical Advice Memorandum issued in July 1993 and reiterated this rejection in a revised TAM dated September 28, 1993.

Plaintiff makes three arguments based on these facts: (1) its presentation of the calculation argument to IRS in the Spring of 1992 was an informal claim permitted by IRS and the courts; (2) plaintiff's presentations in 1992 and 1993 were timely amendments to its informal claim; and (3) IRS' administrative review of plaintiff's case on the merits in 1992 and 1993 constituted a waiver of plaintiff's failure to comply with the requirements of Treas. Reg. 301.6402–2(b).

### A. The Informal Claims Doctrine

■ The Informal Claims Doctrine permits a taxpayer to rely upon informal submissions to the IRS in some circumstances,

---

6. Oral statements, without further corroboration, are not sufficient to establish an informal claim

for refund. *Furst v. United States,* 230 Ct.Cl. 375, 678 F.2d 147, 151–52 (1982).

but they must be made within the period established by I.R.C. § 6511 for filing refund claims. The Court of Claims stressed that although an informal claim may lack the requisite formality, it must be filed within the statutory period for filing a formal claim.

It has long been recognized, however, that a formal claim for refund is not needed; all that is required is *a timely informal claim.* Such informal notice serves the same function as a formal refund claim, "to put the Commissioner on notice that a right is being asserted with respect to an overpayment of tax ...." This enables the IRS, if it wishes, to begin an examination of the claim (emphasis added) (citations omitted).

*Furst,* 678 F.2d at 151.

Any other approach would favor informal claims over formal claims. A formal claim must be filed timely. It follows that an informal claim providing the same information also would be subject to the applicable statute of limitations. The informal claim doctrine does not apply in these circumstances.

### B. Amendment to the Claim

The law allows certain amendments to a properly filed claim after the statutory period has expired. Plaintiff argues that its claim in the Spring of 1992 could be viewed as an amendment, if it is not an informal claim. *See United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941)(notice fairly advising IRS of the nature of taxpayer's claim treated as a claim where lack of specificity remedied by amendment filed after the lapse of the statutory period).

Plaintiff cannot meet the legal requirements of an amendment to a claim. Amendments must be "germane" to the original claim, and they must be presented before the original claim has been resolved.

### 1. The Claim Was Not Germane

■ A taxpayer may raise a new ground for refund in an amended claim only if the ground is "germane" to a timely filed claim. The Supreme Court explained this requirement as follows:

An amendment which merely makes more definite the matters already within [IRS'] knowledge, or which ... [IRS] would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation ... cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

*United States v. Andrews,* 302 U.S. 517, 524, 58 S.Ct. 315, 82 L.Ed. 398 (1938).

■ Plaintiff's 1992 calculation claim cannot be said to have "merely [made] more definite the matters already within [IRS'] knowledge." *Id.* IRS did not know of a problem with the computation of deficiency interest for tax year 1974 when plaintiff filed originally in 1981 or amended in 1983. Plaintiff contends that *Andrews* allows amendment in these circumstances because IRS "would naturally have ascertained" its error in failing to recompute the account module in the course of investigating the original claim. But this is not a situation in which the original claim was too general and merely lacked specificity with respect to an issue within the scope of that general claim. IRS would not "naturally" have ascertained the specific contours of the claim when evaluating the facts underlying the general claim.

The potential amended claim would not render sufficiently specific a "too general claim" because plaintiff's original refund claim was specific as to IRS' alleged error and the relief sought. Plaintiff asked for reassessment of taxes due and return of deficiency interest that it had paid. The claim did not allege an error in IRS' prior calculation of deficiency interest. A factual investigation by IRS would "naturally" focus only on the dispute concerning taxes due. Indeed, if IRS had concluded that no refund of taxes were appropriate, it "naturally" would have stopped there. It would have made no calculations with respect to a refund of deficiency interest.

Plaintiff relies upon *Continental Foundry & Mach. Co. v. United States,* 141 Ct.Cl. 604, 159 F.Supp. 608 (1958), for the proposition that a taxpayer may amend a claim to challenge IRS' method of computation. The

court concluded that a prerequisite for an amended claim is that the original claim directed IRS' attention to the subsequent claim. *See id.* at 612, 159 F.Supp. 608. This plaintiff's original claim did not direct IRS to examine its method of calculating deficiency interest, however, as noted.

Plaintiff also cites *Addressograph–Multigraph Corp. v. United States,* 112 Ct.Cl. 201, 223, 78 F.Supp. 111 (1948), in which the court concluded that an amendment to the original claim was germane where "the amendment merely made more definite the matters already within the knowledge of the Commissioner, which in the course of his investigation he actually did ascertain."

In that case, however, the court determined that the amendment "did not involve a 'new and unrelated ground,' but bore a very close relation to the timely claims." *Id.* at 223, 78 F.Supp. 111. Here, the claim that plaintiff offers as an amendment was an entirely different claim. While plaintiff routinely sought interest on the over-assessment, to which it was entitled anyway, the current claim is a new one—that IRS did not calculate the interest in accordance with then-standard procedures.

### 2. The Amendment Was Late

■ If plaintiff could demonstrate that its amended claim raising the account module issue would have been germane, an amendment is allowed only if submitted before IRS has duly considered and resolved the original claim. IRS resolved plaintiff's formal claim in September 1990, well before plaintiff first raised the account module issue. The Court of Claims ruled that a claim later submitted

> was not an amendment or supplement to the claim of March 8, 1924 .... [T]he fact is that the claim of March 8, 1924, was not in existence and could not be amended nor supplemented. It had been considered and rejected by the Commissioner of Internal Revenue, and it could not subsequently, after the statute of limitations had expired, be enlarged or supplemented so as to give the taxpayer any greater right than existed under an original claim filed at such time.

*Sugar Land Railway Co. v. United States,* 71 Ct.Cl. 628, 48 F.2d 973, 976 (1931). *See also* *Newport Ind. v. United States,* 104 Ct.Cl. 38, 44, 60 F.Supp. 229 (1945) ("A refund claim, informal or formal, cannot be amended or perfected as a matter of right after it has been denied or rejected, and after the period of limitation has expired."); *Mutual Life Ins. Co. of New York v. United States,* 72 Ct.Cl. 204, 49 F.2d 662, 664, *cert. denied,* 284 U.S. 628, 52 S.Ct. 12, 76 L.Ed. 535 (1931) ("To hold that a claim for refund made on a specific ground may, after it has been considered and rejected, be amended or enlarged so as to include an entirely different ground, would be to permit an indefinite postponement of the statute of limitation for bringing suit and would nullify the provisions of the statute.")

Plaintiff contends that a claim may be amended at any time before IRS issues a "formal notice of disallowance" or before the taxpayer files suit. So long as IRS has not issued a notice of disallowance and the taxpayer has not filed a refund suit, IRS retains control over the claim and can entertain amendments to that claim, according to plaintiff. IRS did not issue a formal notice disallowing plaintiff's September 1981 claim until July 28, 1993.

Plaintiff uses the 1993 date because IRS notified plaintiff then that "Appeals has concluded consideration of your claims and based upon the [Technical Advice Memorandum] and prior Appeals decision, the claims are not allowed." This letter referred to IRS' investigation into plaintiff's interest calculation argument, however, not to its consideration of plaintiff's original refund claim. Final action on plaintiff's original claim occurred in September 1990. Once IRS completed its analysis and acted on its determination in 1990, no claim existed for the taxpayer to amend. *See United States v. Garbutt Oil Co.,* 302 U.S. 528, 535, 58 S.Ct. 320, 82 L.Ed. 405 (1938) ("the statement filed after the period for filing claims had expired was not a permissible amendment of the original claim presented. It was a new claim untimely filed and the Commissioner was without power, under the statute, to consider it").

IRS resolved plaintiff's claim for refund of tax and deficiency interest well before plaintiff's 1992 proposed amendment. By the time plaintiff raised the calculation issue in the Spring of 1992, an amendment of that claim no longer was possible.

### C. Waiver

Plaintiff contends that even if the 1992 discussions regarding the issue of recomputing the account module were too late to constitute a formal claim and too late to form the basis for an amended claim, IRS' consideration of plaintiff's arguments on the merits constituted a waiver of the Variance Doctrine. Treas. Reg. 301.6402–2(b). IRS does have the authority to waive its regulations in some cases. *See Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 297, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945). However, a waiver for plaintiff's purposes must have occurred within the applicable statutory time period for the filing of a refund claim.

Congress permits a taxpayer to bring suit for a tax refund only after "a claim for refund or credit has been *duly filed* ...*,* according to *the provisions of law* in that regard, and *the regulations of the Commissioner* established in pursuance thereof." I.R.C. § 7422(a) (emphasis added).

"Duly filed" means filed in a proper manner, at the expected time. *See e.g. Black's Law Dictionary* 517 (7th ed.1999).

"The provisions of law" are I.R.C. § 6511(a), which controls the timing of such a claim with two or three-year limitations periods; and I.R.C. § 6511(b), which bars any refund "unless a claim for credit or refund is filed by the taxpayer within such period."

"The regulations of the Commissioner" here means Treas. Reg. § 301.6402–2(b), which requires that a claim for refund be sufficiently specific to advise IRS of the basis for plaintiff's claim—the Variance Doctrine.

Given these pertinent "provisions of law" governing the timing of the submission of a claim for refund and the "regulations of the Commissioner" as to the content of such a claim, Congress waived sovereign immunity in I.R.C. § 7422 to authorize a refund suit only for a claim that is "duly filed" consistent both with statutory requirements and with applicable Treasury Regulations.

*Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 297, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945) recognizes the possibility that IRS could waive applicable regulations. If a claim does not satisfy the requirements of a particular regulation, but IRS waives that regulation prior to expiration of the applicable limitations period, the claim can be said to have been brought within the statutory limitations period, fully in accordance with "the regulations of the Commissioner."

Where a purported waiver occurs after expiration of the statutory period, as here, the requirements of I.R.C. § 7422 have not been met. The claim is not "duly filed" because the statutory limitations period for filing a proper claim had expired by the time the actions that allegedly resulted in a waiver occurred. Because plaintiff did not satisfy IRS regulations or secure a waiver of those regulations within the statutory period, plaintiff did not "duly file" a claim "according to the provisions of law and ... regulations of the Commissioner." I.R.C. § 7422.

Plaintiff's interpretation of I.R.C. § 7422 would give IRS broad and significant new power. For reasons that we have stated, plaintiff did not have a legally enforceable claim for refund in 1992. The formal claim that plaintiff presented in 1981 did not encompass its calculation of interest theory. Plaintiff could not properly raise the theory in an informal claim, a new formal claim, or an amended claim. If IRS could waive statutes or regulations related to limitations in these circumstances, it could require the Government to make a payment that legally it was not obligated to pay. *See Finn v. United States,* 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887).

### VI.

### A. Extensions by Agreement

Plaintiff's informal claim argument has no merit because the statutory period for filing a claim on the calculation issue already had expired in the Spring of 1992 when plaintiff first raised it informally with the IRS. Informal claims are subject to the same limita-

tions as formal claims. Therefore, plaintiff could raise claims with respect to tax year 1974 no later than August 6, 1983 unless some event extended that statutory time period. I.R.C. § 6511(c)(1) permits an extension of the filing period by an agreement pursuant to I.R.C. § 6501(c)(4).

> I.R.C. § 6511(c)(1)—Time for filing claim. The period for filing claim for credit or refund or for making credit or refund if no claim is filed ... shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4).

I.R.C. § 6501(c)(4) makes the following provisions for extensions:

> (4) Extension by agreement.—
>
> (A) In general.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title ... both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

The parties executed a series of Forms 872 that gave IRS time to make additional assessments for tax year 1974.[7] Plaintiff had six months after the final assessment date provided for in the extension agreements to file a claim for refund for that year. I.R.C. § 6511(c)(1). None of these Form 872 time extensions delayed the filing period beyond August 6, 1983.

The parties made another series of extension agreements that were limited to specific issues. The final extension agreement in this series was a Form 872–A, which unlike its Form 872 predecessors, did not contain a specific expiration date for the assessment period.[8] Paragraph 4 of the Form 872–A agreement begins, "The taxpayer(s) may file a claim for credit or refund and the [IRS] may credit or refund the tax within 6(six)

months *after this agreement ends.*" (emphasis added). Below this, IRS added the following:

> The amount of any deficiency assessment is to be limited to that resulting from any adjustment(s) to income, deductions, gains or losses, or credits of the taxpayers involving distributions, payments, or inurements received actually or constructively with respect to any and all transactions between the taxpayers and Arabian American Oil Company, Arabian American Oil Company shareholders, and/or the Saudi Arabian Government or its entities relating to or arising out of an Internal Revenue Service examination of Arabian American Oil Company, including any consequential changes to other items based on such adjustment. This Form 872–A also covers any addition(s) to tax which may be appropriate as a result of the facts and circumstances surrounding any adjustment(s).
>
> With respect to any refund claim based upon any such adjustment, the provisions of Section 6511(c), Internal Revenue Code of 1954, are limited to any refund or credit resulting from adjustments for which the period of assessment is extended under this Form 872–A.

Plaintiff contends that this Form 872–A agreement was in effect in 1992 and 1993 when the parties discussed the issue of recomputing the account module, and that the time for filing a claim concerning this issue remained open then. Defendant responds that the Form 872–A agreement had expired by its own terms long before the 1992 and 1993 discussions, and in any event the agreement permitted only claims related to the Arabian American Oil Company (Aramco) issue.

#### B. Form 872–A

The Form 872–A agreement sets forth the circumstances under which the extensions granted would cease to be effective. Paragraph 1 of the agreement provides:

> (1) The amount(s) of any Federal income tax due on any return(s) made by or for the above taxpayer(s) for the period(s)

---

7. Form 872 is captioned "Consent to Extend the Time to Assess Tax."

8. Form 872–A is "Special Consent to Extend the Time to Assess Tax."

ended December 31, 1974 may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872–T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited. A final adverse determination subject to declaratory judgment under sections 7428, 7476, or 7477 of the Internal Revenue Code will not terminate this agreement.

Paragraph 2 establishes the possibility that the Form 872–A agreement could end earlier than provided in Paragraph 1, as follows:

(2) This agreement ends on the earlier of the above expiration date or the assessment date of an increase in the above tax or the overassessment date of a decrease in the above tax that *reflects the final determination of tax* and the final administrative appeals consideration .... (emphasis added).

The Form 872–A agreement expired during 1990. Plaintiff signed and submitted to IRS three documents on June 12, 1990—a Form 2297 "Waiver of Statutory Notification of Claim Disallowance," a Form 870–AD "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Over-assessment," and a Form 906 "Closing Agreement on Final Determination Covering Specific Matters." The Form 2297 indicated for tax year 1974 that the amount of the claim was $110,034,821, and that the amount disallowed was $100,866,765. The Form 870–AD listed for tax year 1974 a corresponding over-assessment of $9,168,056. The Form 906 proposed a resolution of the still-open Aramco issue.

IRS accepted plaintiff's Form 870–AD "Offer of ... Acceptance of Over-assessment" on August 20, 1990. IRS issued credits and refunds for the overassessment to plaintiff in September 1990. The Form 872–A agreement came to an "end" in August 1990. IRS made the requisite "final determination of tax" then, as provided in Paragraph 2 of the agreement.

The Form 872–A agreement gave plaintiff six months after the Form 872–A "ended" to file a claim. ("The taxpayer(s) may file a claim for credit or refund, and the [IRS] may credit or refund the tax within 6(six) months after this agreement ends.") Plaintiff did not address the issue of recomputing the account module until the Spring of 1992. This was well beyond the six-month period for filing a claim. Plaintiff made its first argument concerning recomputation of the account module after the statutory period for filing had expired.

Plaintiff urges a contrary interpretation based on Rev. Proc. 79–22, 1979–1 C.B. 563, 1979 WL 49345, which provides in Section 4, Procedures:

4.02 With the exception of the mailing of a notice of deficiency, written notification by the [IRS] to the (taxpayers) of termination of [IRS] consideration can only be made using Form 872–T.

&ast; &ast; &ast; &ast; &ast; &ast;

4.04 Steps taken to terminate Forms 872–A by the [IRS] or the (taxpayers) other than by using Forms 872–T (e.g., by letter or orally) will not terminate Form 872–A.

Plaintiff argues that because a Form 872–T had not been issued by the Spring of 1992, the Form 872–A could not have "ended" by then. But this procedure addresses another situation, where one of the parties attempts to terminate a Form 872–A agreement orally or in writing other than by a Form 872–T. Requiring the use of such a form avoids possible ambiguity or confusion regarding the continued effectiveness of a Form 872–A agreement.

The parties here provided that the agreement would "end" pursuant to its own terms upon the occurrence of a specified condition precedent. The taxpayer is entitled to define the scope of its own bilateral agreement with

IRS; Rev. Proc. 79–22, 1979 WL 49345 does not limit that right.

### C. Scope of Paragraph 4

Defendant points out that even if the Form 872–A were in effect during the 1992 and 1993 discussions, it did not authorize a claim based on recomputing the account module. The parties agreed that the extension provided for new assessments and corresponding claims on one subject—the Aramco issue. That was the issue that they had not yet resolved. Plaintiff's claim concerning calculation of interest is not included in this issue.

Plaintiff agrees that the typewritten addition to Paragraph 4 of the agreement limited the scope of any future assessments by IRS to adjustments involving the Aramco issue, but it does not agree that Paragraph 4 limited the scope of any refund claims filed by plaintiff. Plaintiff points to language at the beginning of Paragraph 4 stating that the taxpayer "may file a claim for ... refund ... within 6(six) months after this agreement ends." This is general language that does not define the type of refund claim plaintiff could file. That issue is addressed in language specific to this case, included in the typewritten addition below paragraph 4. The parties limited the type of assessment that IRS could make and addressed the type of claims that plaintiff could submit: "With respect to any refund claim based upon any such adjustments, the provisions of Section 6511(c) ... are limited to any refund or credit resulting from adjustment for which the period of assessment is extended under this Form 872–A." Paragraph 4 does not authorize refund claims other than those resulting from adjustments based on the Aramco issue.

Plaintiff argues that the absence of authorization to file any other type of claim is not significant because the typewritten language in Paragraph 4 merely reinforces the understanding that a challenge to any Aramco adjustment had to be filed within six months after the "end" of the Form 872–A agreement. Plaintiff argues that because the provision is silent regarding plaintiff's right to file any other type of refund claim, the provision should not place any limitations on filing such claims within the period permitted by I.R.C. § 6511(c).

The six-month period in I.R.C. § 6511(c) necessarily would apply to all possible claims that the taxpayer is authorized to file as a result of the entry of a Form 872–A agreement. ("The period for filing a claim for ... refund ... shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement.") The Form 872–A agreement did not extend the period for filing all refund claims. Paragraph 4 mentions only refund claims based on adjustments related to Aramco. The parties anticipated that both IRS' assessments and the taxpayer's claims for refund would be limited to issues stemming from IRS' handling of the Aramco issue.

Plaintiff points out that I.R.C. § 6511(c)(1) sets limitation periods for filing refund claims by reference to the period of limitations for assessments rather than by the subject of the assessment—"6 months after the expiration of the period within which an assessment may be made." Therefore, the regulation does not contemplate extensions for filing refund claims that are restricted by subject matter. I.R.C. § 6511(c)(1) does not preclude the parties from agreeing to an extension that is so limited, however.

Plaintiff argues that the Form 872–A agreement permitted IRS to assess deficiency interest, so it must also have permitted plaintiff to file a claim for refund of deficiency interest. But again, the Form 872–A agreement limited the period for filing refund claims to those related to the Aramco issue. The Form 872–A agreement did not authorize a refund claim or deficiency interest claim unless IRS made an Aramco-related adjustment. Plaintiff acknowledges that IRS errors in assessing deficiency interest did not occur with respect to Aramco-related adjustments.

### CONCLUSION

The $817,531 that plaintiff seeks to recover in this lawsuit is a portion of the $36 million in interest that plaintiff paid in August 1981 in response to IRS' assessment of a $70

million tax deficiency.[9] That claim is barred by the statute of limitations because plaintiff did not file a timely claim for refund. Plaintiff's discussions with IRS about interest calculation in the Spring of 1992 do not constitute an informal claim because the statute of limitations expired in August 1983. They were not an amendment to the 1981 claim because that claim was settled in 1990, and it no longer existed in 1992. Plaintiff's other arguments are rejected for the reasons stated above.

Defendant's motion to dismiss is GRANTED. The Clerk will enter judgment dismissing plaintiff's complaint. No costs.

---

**9.** IRS refunded taxes of $9.1 million and paid $29 million interest to plaintiff in 1990. Plaintiff has not contested the calculation of that interest. The complaint does not address it, and plaintiff's counsel stated during oral argument, "[w]e are not asking ... for any interest with respect to that refund of $9 million."