KAYATTA, Circuit Judge.
The four bankruptcy appeals before us pose a single question of statutory interpretation: whether a Massachusetts state income tax return filed after the date by which Massachusetts requires such returns to be filed constitutes a “return” under 11 U.S.C. § 523(a) such that unpaid taxes due under the return can be discharged in bankruptcy. For the reasons set forth below, we conclude that it does not.
I. Background
The facts in each of the four cases now on appeal are undisputed. John Brown, Brian Fahey, Anthony Gonzalez, and Timothy Perkins (the “debtors”) all failed to timely file their Massachusetts income tax returns for multiple years in a row. This failure would not be a problem for them in these bankruptcy proceedings, but for the fact that they also failed to pay (either timely or otherwise) their taxes to the Massachusetts Department of Revenue. Eventually, each debtor filed his late tax returns, but still failed to pay all taxes, interest, and penalties that were due. More than two years later, they filed for Chapter 7 bankruptcy. The debtors seek a ruling that their obligation to pay the taxes they failed to pay is dischargeable.[1] *3 The Department argues for the opposite result; it contends unpaid taxes for which no return was timely filed by the Commonwealth’s statutory deadline fit within an exception to discharge under 11 U.S.C. § 523(a)(l)(B)(i).
The procedural postures of these four cases are described in detail in the Bankruptcy Appellate Panel (“BAP”) and district court opinions that gave rise to these appeals. Perkins v. Mass. Dep’t of Revenue, 507 B.R. 45, 46-47 (D.Mass.2014); In re Gonzalez, 506 B.R. 317, 318-23 (B.A.P. 1st Cir.2014); In re Brown, B.A.P. No. MW 13-027, 2014 WL 1815393, at *1-5 (B.A.P. 1st Cir. Apr. 3, 2014). In brief, the bankruptcy courts below split three to one in favor of the debtors, the BAP sided with the debtors in the two cases appealed to the BAP, and the district court granted summary judgment to the Department in the two cases appealed to the district court.
II. Discussion
A. Standard of Review
Since no material facts are disputed and the issue before us turns entirely upon an interpretation of law, our review is plenary. Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 323 (1st Cir.2008); Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int’l, Inc.), 132 F.3d 104, 107 (1st Cir.1997).
B. Legal Background
Section 727 of the Bankruptcy Code instructs the court to grant a debtor a discharge from his debts in a Chapter 7 bankruptcy proceeding. See 11 U.S.C. § 727. This rule is subject to several exceptions. In particular, 11 U.S.C. § 523(a)(1) controls whether unpaid taxes are dischargeable in bankruptcy. It provides, in relevant part:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
(1) for a tax or a customs duty—
(B) with respect to which a return, or equivalent report or notice, if required—
(i) was not filed or given; or
(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]
11 U.S.C. § 523(a)(l)(B)(i)-(ii). In other words, a tax is not dischargeable if the debtor failed to file a return, or if — perhaps anticipating bankruptcy — he filed the return late and within two years of his bankruptcy petition.
Looking solely at the foregoing language, and using a common notion of what a “return” is, one could easily conclude that any return filed after the due date but more than two years before a bankruptcy filing would place the tax due under that return outside the section 523(a)(1) exception, and thus within the broad category of dischargeable debts. Prior to 2005, courts nevertheless attempted to fashion a definition of “return” that prevented debtors from relying on “bad faith” returns, or returns filed only after the taxing authority actually issued an assessment for taxes due in the absence of a tax return. See generally Moroney v. United States (In re Moroney), 352 F.3d 902, 905-06 (4th Cir.2003) (providing examples of courts that determined late tax returns “filed after an involuntary assessment do not serve the *4 purposes of the tax system, and thus rarely, if ever, qualify as honest and reasonable attempts to comply with the tax laws”).
In 2005, Congress decided to define “return” on its own when it passed the Bankruptcy Abuse Prevention and Consumer Protection Act (“BAPCPA”), making numerous revisions to section 523. Pub.L. No. 109-8, 119 Stat. 23 (2005). Among the BAPCPA’s changes was the insertion of a “hanging paragraph,” denoted as section 523(a)(*), at the end of section 523(a). It provides:
For purposes of this subsection, the term “return” means a return that satisfies the requirements of applicable non-bankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.
11 U.S.C. § 523(a)(*).[2]
So the question now presented is a question of statutory interpretation: Is a Massachusetts tax return filed after the due date for such returns a “return” as defined in section 523(a)(*) so that the tax due under that return remains dischargeable?[3]
C. Analysis
Read together, the hanging paragraph’s definitional language and the “applicable” Massachusetts law control our decision. Under the hanging paragraph, for a document, whatever it may be called, to be a “return,” it must “satisf[y] the requirements of applicable nonbankruptcy law (including applicable filing requirements).” So the question is whether timely filing is a “filing requirement” under Massachusetts law. The answer is plainly yes.
As the Massachusetts Supreme Judicial Court has held for state tax law purposes, “[t]he general rule of construction is that where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words.” Comm’r of Revenue v. AMIWoodbroke, Inc., 418 Mass. 92, 634 N.E.2d 114, 115 (1994) (citing O’Sullivan v. Sec’y of Human Servs., 402 Mass. 190, 521 N.E.2d 997, 1000 (1988)). Mass. Gen. Laws ch. 62C, § 6(c) (“section 6(c)”) states that “[e]xcept as otherwise provided, [income tax returns] shall be made on or before the fifteenth day of the fourth month following the close of each taxable year.” None of the exceptions that “otherwise provide! ]” are applicable here.[4] This *5 command that returns “shall” be made by the due date certainly seems like a “filing requirement.” See Black’s Law Dictionary (10th ed.2014) (defining “shall” as “a duty; more broadly, is required to[;] the mandatory sense that drafters typically intend and that courts typically uphold”). And another section of the Massachusetts tax code makes plain that it is so viewed. See Mass. Gen. Laws 62C, § 32(a) (“section 32(a)”) (“Taxes shall be due and payable at the time when the tax return is required to be filed.”). Accordingly, under this straightforward reading of Massachusetts law, a return filed after the due date is a return not filed as required, i.e., a return that does not satisfy “applicable filing requirements.”
The two other circuits to have decided this issue, albeit construing other jurisdictions’ “applicable” filing deadlines, reached the same conclusion. The Tenth Circuit recently found returns filed late under the Internal Revenue Code (“I.R.C.”) not to be returns within the meaning of the hanging paragraph. Mallo v. Internal Revenue Service (In re Mallo), 774 F.3d 1313, 1321 (10th Cir.2014) (explaining, in reference to the I.R.C.’s deadline for income tax returns, that “the phrase ‘shall be filed on or before’ a particular date is a classic example of something that must be done with respect to filing a tax return and therefore, is an ‘applicable filing requirement’ ”). Similarly, the Fifth Circuit determined that a debtor’s failure to comply with a Mississippi law stating that returns “shall be filed on or before April 15th” meant that the returns did not satisfy applicable filing requirements under the hanging paragraph’s definition. McCoy v. Miss. State Tax Comm’n (In re McCoy), 666 F.3d 924, 928, 932 (5th Cir.2012). And at least one other circuit court judge, in dictum, predicted such a result. In re Payne, 431 F.3d 1055, 1060 (7th Cir.2005) (Easterbrook, J., dissenting) (“After the 2005 legislation, an untimely return can not lead to a discharge — recall that the new language refers to ‘applicable nonbankruptcy law (including applicable filing requirements).’ ”).
The debtors nevertheless argue that the hanging paragraph’s language is not quite so clear as to dictate our holding. Perhaps the term '“applicable filing requirement” may acquire vagueness at the outer boundaries of its possible application. See Anto-nin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 31-32 (2012) (explaining that vagueness is present when a phrase’s “unquestionable meaning has uncertain application to various factual situations”). For example, is an instruction on an official form that the filer not staple the return together, or staple the check to the return, an “applicable filing requirement”? However one might answer that question, we do not see how there is any room for reasonable argument that, as a matter of plain language, a Massachusetts law setting the date when a tax return “is required to be filed” is somehow not a “filing requirement.”
In nevertheless describing the statute as materially ambiguous and our reading of it contrived, the dissent relies on the premise that when a statute states that the universe of X “includes” Y, one normally presumes that Y is merely an example of what is in X, and, that X includes more than Y. Op. at 14. The dissent errs, though, in claiming that our interpretation fails to satisfy this premise. The dissent makes this error by presuming that the universe defined by the statute is “late-filed returns *6 that count as returns,” Op. at 14, and that section 6020(a) returns (and “similar” state or local law returns) are therefore simply examples of a wider array of permitted late filed returns. The statute neither says nor implies any such thing. Rather, the statute provides that a “return” includes a “return prepared pursuant to section 6020(a) ... or similar State or local law.” So one presumes only that a “return” includes more than these few types of returns. And it plainly does: it includes all sorts of returns (such as Form 1040s) that satisfy their respectively applicable filing requirements.
Similarly, the dissent errs in claiming that our reading of the statute “means that conversely, a section 6020(b) return would be the only type of return that is not a return.” Op. at 14. This is plainly not so — any type of return not filed in accord with applicable filing requirements is not a “return” under our reading of the statute. The returns at issue in this case are a notable demonstration that section 6020(b) returns are not the only ones that are not returns under the statute.
Widening the scope slightly, debtors point to the language of section 523(a)(l)(B)(ii) (“the two-year provision”), which clearly implies that there can be a “return” that is filed within two years “after the date on which such return ... was last due.”[5] So the hanging paragraph cannot be read as entirely excluding the possibility that a late return can also be a “return.” Grasping onto this point, the debtors contend (and the BAP agreed) that our interpretation would “vitiat[e] in its entirety” the two-year provision, rendering it “superfluous.” See TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (“It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.” (citation and internal quotation marks omitted)); Nat’l Org. for Marriage v. McKee, 649 F.3d 34, 66 (1st Cir.2011) (quoting TRW Inc. for the same proposition).
The defect in this argument is that the hanging paragraph itself carves out an exception from its general rule, deeming one type of late return to be a return. It specifies that “a return prepared pursuant to section 6020(a) ... or similar State or local law” qualifies as a “return,” while those prepared pursuant to section 6020(b) do not. 11 U.S.C. § 523(a)(*). Section 6020(a) and (b) can both be invoked when a taxpayer “fails to make” a proper return, including situations where the taxpayer is late in filing a return to the I.R.S. See McCoy, 666 F.3d at 928-29. Therefore, a late tax return, if prepared in compliance with section 6020(a) and filed within two years of the bankruptcy petition, is still a return (and the tax due thus dischargea-ble), notwithstanding its failure to meet the otherwise “applicable filing requirement” of a mandatory deadline. While section 6020(a) may only apply in a small minority of cases, the fact that a late filed section 6020(a) return can still qualify as a “return” for section 523(a) purposes means that the two-year provision still has a role to play if the hanging paragraph’s plain meaning controls.
The I.R.S.’s Chief Counsel has referred to the number of section 6020(a) returns as “minute” and in 2010 took the position that the safe harbor created by it was “illusory” because taxpayers have no right to de *7 mand a return under the provision. I.R.S. Chief Couns. Notice CC-2010-016 at 2-3 (Sept. 2, 2010). We accept the claim that such returns are rare, and are allowed only at the I.R.S.’s behest. It hardly follows, though, that the safe harbor expressly created for such returns is illusory. In fact, this “narrow safe harbor,” hypothetically described by the district court below in the Perkins case, was utilized by a debtor in a recent bankruptcy case where the bankruptcy court was bound by the reading of section 523(a)(*) that the Department urges here. See In re Kemendo, 516 B.R. 434, 438 (Bankr.S.D.Tex.2014). In that case, the I.R.S. had prepared a tax return with information provided by the taxpayer, in accordance with section 6020(a). Id. at 438. More than two years later, the taxpayer filed for bankruptcy. Id. at 438-39. The bankruptcy court found that the taxpayer’s delinquent tax debt had been properly discharged. Id. In short, reading the hanging paragraph as generally excluding returns filed after the date when applicable law requires them to be filed does not conflict with the implication of section 523(a)(l)(B)(ii) that there can be a late return, either notionally or in practice.
The dissent takes a different tack, deeming it “absurd” to think that Congress would allow a discharge of taxes due under a section 6020(a) return prepared years after the due date, but not under a Massachusetts return that is one day late. We see no absurdity. Section 6020(a) is a tool for the I.R.S., invoked solely at its discretion, when it decides obtaining help from the late filing taxpayer is to the I.R.S.’s advantage. That Congress left the I.R.S. a carrot to offer a taxpayer in such infrequent cases does not mean that it was absurd for Congress not to extend this carrot categorically to large numbers of other late filers.
But, say the debtors, our reading of the hanging paragraph still renders unnecessary its last clause, stating that the term “return” does not include' “a return made pursuant to [section 6020(b) ] or a similar State or local law.” The debtors are correct on this point. Nevertheless, we do not see this as the type of redundancy that invokes any effective application of the doctrine that we try to read statutes so that no section is superfluous. Here, in context, it simply appears that in creating an exception for section 6020(a), the drafters made clear (desiring a belt and suspenders) that they were not including its companion section 6020(b).[6] Whatever one thinks of this redundancy, it offers too little to parry the force of the observation that a requirement to file on time is a filing requirement. See In re McCoy, 666 F.3d at 931.
Moreover, were we to adopt the debtors’ position that a law requiring compliance with a filing deadline is not a filing requirement, we would be left without any textual basis for distinguishing those filing requirements that count from those that do not. Instead — and debtors and the dissent are frank about this — we would be back to tinkering with subjective and conflicting judge — made rules. In that respect, we would render the principal thrust of the hanging paragraph to be largely of no effect. Of course, the debtors say that this is what Congress wanted, simply seeking to “confirm” pre-existing case law. But, as we discuss in greater detail later in this opinion, there was no such uniform rule in the case law to which the language in the hanging paragraph could be read as *8 referring. Cf. In re Mallo, 774 F.3d at 1325 (“If Congress intended to define a return through application of the Beard test or some other substantial compliance doctrine, rather than by a taxpayer’s compliance with the applicable filing requirements contained, in the Tax Code, Congress [would not have added] the phrase ‘including applicable filing requirements.’ ”).
The debtors also seek support in the Massachusetts laws and regulations bearing on the meaning of “return.” They point out that in Massachusetts, a pre-assessment delinquent return is treated the same as any other return.[7] This is not exactly so, however, as Massachusetts imposes a penalty on any taxpayer who does not file his return by the date required. See Mass. Gen. Laws ch. 62C, § 33 (“Late returns; penalty; abatement”).[8]
Relatedly, the debtors contend that the Commonwealth’s own definition of “return” lacks a timeliness element. This, too, is not exactly so. The Massachusetts Code of Regulations defines a return as “a taxpayer’s signed declaration of the tax due, if any, properly completed by the taxpayer or the taxpayer’s representative on a form prescribed by the Commissioner and duly filed with the Commissioner.” 830 C.M.R. 62C.26.1(2) (emphasis supplied). Webster’s Third New International Dictionary gives as its first definition-“in a due manner, time, or degree.” Webster’s Third New International Dictionary 700 (3d ed.2002). Courts consistently include a timeliness element when interpreting “duly” in other contexts. See, e.g., McAdams v. United States, No. 07164T, 2008 WL 654271, at *3 (Fed.Cl. Feb. 1, 2008) (in order for a claim to be duly filed under 26 U.S.C. § 7422, it must comply with the statutorily prescribed timeliness requirement in 26 U.S.C. § 6511(a)); O’Connell v. United States, No. 02-10399-RBC, 2004 WL 1006485, at *3 (D.Mass. Mar. 22, 2004) (same); Mobil Corp. v. United States, 52 Fed.Cl. 327, 331, 337 (Fed.Cl.2002) (I.R.C. regulation prohibiting suit to recover wrongfully assessed taxes “until a claim for refund ... has been duly filed” includes timeliness requirement). In sum, the debtors’ invocation of Massachusetts laws and regulations does not change the result.[9]
Sensibly anticipating weak support in the statutory and regulatory language, the debtors rely with much emphasis on three other rules of statutory construction.
First, they (and the amicus curiae) implore us to find instructive the notion that exceptions to discharge should be narrowly construed in the debtor’s favor, Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 17 (1st Cir.2002), and that the Bankruptcy Code should be read in light of its purpose to provide a fresh start to the “honest but unfortunate debtor.” Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (“One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfor *9 tunes.” (internal quotation marks omitted)).
Second, the debtors attempt to frame our interpretation — particularly with respect to the limitations it imposes on the two-year provision’s applicability — as representing a significant change to the pre-2005 Bankruptcy Code. The debtors and the bankruptcy court below for the Brown and Gonzalez cases quote the Supreme Court in urging us to be “reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.” Dewsnup v. Timm, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).
Third, the debtors and amicus curiae call the result we reach here — that all late filed returns in Massachusetts are not subject to discharge in bankruptcy — “unfathomable” and its consequences “draconian” and “absurd.”
Our response to the debtors’ reliance on these rules of statutory construction is fourfold.
First, and most importantly, where the question is whether a Massachusetts law setting a date by which a tax return “is required to be filed” is a “filing requirement” under Massachusetts law, we find little need — or justification — for turning to secondary principles of statutory construction. Cf. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (“The language before us expresses Congress’ intent ... with sufficient precision so that reference to legislative history and to pre-Code practice is hardly necessary.”).
Second, while the result we reach may be unfavorable towards delinquent taxpayers who are also bankrupt, there is hardly anything “unfathomable,” “draconian,” or “absurd” in the notion that Congress might disfavor debtors who both fail to pay their taxes and also fail to timely file the returns that would alert the taxing authority to the failure to pay. Cf. id. at 242, 109 S.Ct. 1026 (“The plain meaning of legislation should be conclusive, except in the ‘rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.’ ” (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982))).
Third, application of secondary principles of statutory construction hardly cuts just one way, or as forcefully as the debtors claim. We note in particular that the hanging paragraph, adding to the statute the key language at issue, was part of an enactment whose motivating factors were: the “recent escalation of consumer bankruptcy filings”; the “significant losses asserted to be associated with bankruptcy filings”; to close the loopholes that “allow and — sometimes—even encourage opportunistic personal filings and abuse”; and “the fact that some bankruptcy debtors are able to repay a significant portion of their debts.” H. Comm, on the Judiciary, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, H.R.Rep. No. 109-31(1), at 3-5 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 90-92.[10] None of these enumerated purposes align with the debtors’ fall-back stance of helping the “honest but unfortunate debtor” achieve a *10 “fresh start.”[11] And as the Supreme Court has already stated, “[t]he statutory provisions regarding nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts — such as ... taxes[.] Congress evidently concluded that the creditors’ interest in recovering full payment of debts ... outweighed the debtors’ interest in a complete fresh start.” Grogan v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).
Finally, we acknowledge that straightforward application of Congress’s language changes presumed practice in some bankruptcy courts (including those that ruled for three of the debtors below). That being said, the judge-made law surrounding the meaning of a “return” in section 523(a) was far from settled. Prior to the BAPCPA, and in the absence of any limiting definition of the term “return,” courts used a four-part test first articulated by the United States Tax Court in Beard v. Comm’r, 82 T.C. 766, 777-78 (1984), aff'd, 793 F.2d 139 (6th Cir.1986), in order to determine whether a document purporting to be a return was a return for purposes of section 523(a). Courts considered a return’s timeliness under the Beard test’s fourth prong: whether the submitted document “represented] an honest and reasonable attempt to satisfy the requirements of tax law.” United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1033-34 (6th Cir.1999) (emphasis supplied); see also Colsen v. United States (In re Colsen), 446 F.3d 836, 839 (8th Cir.2006); In re Payne, 431 F.3d at 1057; In re Moroney, 352 F.3d at 905; United States v. Hatton (In re Hatton), 220 F.3d 1057, 1060-61 (9th Cir.2000). These cases dealt only with federal tax returns, and even within that limited context, failed to reach a consensus on the issue. The Fourth, Sixth, Seventh, and Ninth Circuits all determined that debtors who submitted their tax returns late for multiple consecutive years and then filed for bankruptcy had not satisfied the test’s fourth prong, but the bases for that conclusion varied. See In re Payne, 431 F.3d at 1057-59 (expressing concern that a chronically delinquent taxpayer was making belated filings to “set the stage” for a discharge in bankruptcy); In re Moroney, 352 F.3d at 905-06 (same); In re Hatton, 220 F.3d at 1061 (debtor “made every attempt to avoid paying his taxes until the IRS left him with no other choice”); In re Hindenlang, 164 F.3d at 1034 (post-assessment returns lack utility for the I.R.S.). But see In re Colsen, 446 F.3d at 839-41 (document’s contents, not timeliness, determined what constitutes a “return” for discharge purposes).
Against this background, it is more plausible that Congress intended to settle the dispute over late filed tax returns against the debtor (who both fails to pay taxes and fails to file a return as required by law) than it is that Congress sought to preserve some version of the unsettled four-pronged Beard test by using language that has no reference to that case law and that certainly suggests no four-pronged definition. Particularly noteworthy is the fact that Congress’s chosen test called for satisfying the filing requirements of applicable law, not merely making an “honest attempt” to do so.[12]
*11 III. Conclusion
For the foregoing reasons, we affirm, the district court’s judgment in favor of the Department in the cases of Fahey and Perkins, and we reverse the BAP’s grant of judgment for Brown and Gonzalez. Summary judgment shall be entered in favor of the Department for the tax years at issue because the debtors’ tax liabilities were not discharged in bankruptcy as a matter of law.

So ordered.

. Although the debtors did not each make identical arguments in their briefs or at oral *3 argument, we attribute their contentions to "the debtors” collectively.

. Section 6020(a) returns are allowed only at the I.R.S.’s request and require the taxpayer’s cooperation, while returns filed under section 6020(b) do not involve assistance by the taxpayer and may involve willful fraud. Compare 26 U.S.C. § 6020(a) with 26 U.S.C. § 6020(b).

. At oral argument, the attorney for Gonzalez and Brown raised the point that even if a late filed return is not a return, it may qualify as an "equivalent report or notice” under section 523(a)(1)(B). Since this argument was not preserved in the record by any of the four debtors or briefed on appeal to this Court, we do not consider it here. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990).

.The Department points us to two statutory provisions that give meaning to the phrase "[e]xcept as otherwise provided.” Mass. Gen. Laws ch. 30, § 24 (as amended 2013) authorizes acts that must be performed on a Saturday, Sunday, or legal holiday to be performed on the next business day. And Mass. Gen. Laws ch. 62C, § 19 (as amended 1985) allows the tax commissioner to "grant a reasonable extension of time for filing any return, provid *5 ed that the taxpayer ... files a tentative return ... and pays therewith the amount of tax reasonably estimated to be due.” The debtors do not argue that these provisions, or any other law or regulation, "otherwise provided” a due date for their filings.

. The purpose of the two-year provision is apparently to prevent debtors from utilizing bankruptcy filings as a way of avoiding their overdue tax obligations. In re Payne, 431 F.3d at 1059.

. The distinction makes sense when we consider the basic difference between sections 6020(a) and (b) because the latter is prepared without the taxpayer’s assistance and sometimes as a result of the taxpayer's willful fraud.

. The Department did not issue assessments against any of the debtors.

. Nor need we address in this case whether a return is required to be filed by the due date if Massachusetts should deem the failure to be excused, and thus of no effect under Mass. Gen. Laws ch. 62C, § 33(f) (waiving any penalty on a showing of good cause).

.We express no opinion on whether other jurisdictions' laws and regulations bearing on a tax return’s timeliness qualify as "applicable filing requirements” under section 523(a)(*).

. There were no published committee reports explaining the hanging paragraph’s purpose, and it remains true that even when a statute effectuates a change to prior law, "where the language is unambiguous, silence in the legislative history cannot be controlling.” Dewsnup, 502 U.S. at 419-20, 112 S.Ct. 773.

. The debtor unfriendly thrust of the BAPC-PA was also manifest in its rewriting of section 523(a)(1)(B) to make it applicable "not only to the failure to file a required return, but also to the failure to file or give an 'equivalent' required ‘report or notice' ” corresponding to the debt. See Maryland v. Ciotti (In re Ciotti), 638 F.3d 276, 279-80 (4th Cir.2011).

. This is not to reject the possibility that pre-amendment case law, such as Beard, might *11 remain viable in deciding whether a document not purporting to be a return is an "equivalent report or notice” under section 523(a)(1)(B). See In re Ciotti, 638 F.3d at 280-81.