**IN RE: Tom A. MCBRIDE, Jean D. McBride, Debtors**

**Tom A. McBride and Jean D. McBride, Plaintiffs**

v.

**City of Kettering, Ohio, Defendant**

**Case No. 11–30672**
**Adv. No. 13–3215**

United States Bankruptcy Court,
S.D. Ohio, Western Division,
**at Dayton.**

Signed April 9, 2015

Darlene E. Fierle, Springboro, OH, for Plaintiff.

Matthew T. Schaeffer, Columbus, OH, for Defendant.

## DECISION OF THE COURT DENYING DEFENDANT CITY OF KETTERING'S MOTION FOR SUMMARY JUDGMENT [Adv. Doc. 58]

L.S. Walter, Judge

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(2) and 1334 and the standing General Order of Reference in this District.

This matter is before the court on the *City's Motion for Summary Judgment* filed by Defendant City of Kettering, Ohio [Adv. Doc. 58]; the *Response of Plaintiffs/Debtors Tom A. McBride and Jean D. McBride to Defendant's Motion for Summary Judgment* [Adv. Doc. 59]; and the *City's Reply in Support of the Motion for Summary Judgment* [Adv. Doc. 63].

In September of 2013, Plaintiff–Debtors Tom A. McBride and Jean D. McBride ("McBrides") reopened their Chapter 7 bankruptcy case in order to file an adversary complaint against Defendant City of Kettering, Ohio ("City"). In the complaint, the McBrides request a determination that certain pre-petition tax obligations owed to the City for the tax years 1997 through 2002 were discharged in their Chapter 7 bankruptcy case and subject to the permanent injunction of the discharge order issued on or about June 21, 2011. The City answered the complaint denying the dischargeability of the tax obligations. Subsequently, the City filed a motion for summary judgment arguing that the tax obligations at issue in this case are nondischargeable because the McBrides failed to file "returns" as required by 11 U.S.C. § 523(a)(1)(B)(i). Although the McBrides did file tax documents with the City for each tax year at issue, the City argues that the documents do not constitute "returns" because one was untimely and all of the tax documents under-reported the McBrides income by a significant amount. After careful review of the parties' filings and the court's own research, the court rejects the City's narrow definition of "return." The court further concludes that whether the McBrides' tax documents constitute returns cannot be determined on summary judgment. As such, the motion for summary judgment is denied and the issue must proceed to trial.[1]

## FACTUAL BACKGROUND

The facts described herein are not in dispute except where stated. During the tax years in question Debtor Tom McBride worked as a State Farm Insurance agent operating within the City of Kettering. The McBrides filed joint tax returns[2] for

---

1. In its answer, the City alternatively argues that the McBrides made fraudulent returns and/or willfully attempted to evade and/or defeat the taxes making the debts nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). Because that issue is not pursued on summary judgment, it is reserved for trial.

2. The dispute before the court on summary judgment centers on whether the McBrides' tax filings constitute "returns" for purposes of 11 U.S.C. § 523(a)(*) and § 523(a)(1)(B)(i). Nevertheless, the parties refer to the filings as returns in their factual statements and for convenience the court will do so as well.

the tax years 1998 [3] through 2002 that are the subject of this dispute. The specific details of their City tax filings are as follows:

1) On November 24, 1999, the McBrides filed their 1998 City income tax return (the "1998 Return"). The 1998 Return shows total income of $2,052, with income tax due of $36. It appears that the 1998 Return was filed late.[4]

2) On October 19, 2000, the McBrides filed their 1999 City income tax return (the "1999 Return"). The 1999 Return shows total income of $1,734, with income tax due of $30.

3) On September 5, 2001, the McBrides filed their 2000 City income tax return (the "2000 Return"). The 2000 Return shows total income of $2,296, with income tax due of $40.

4) On July 3, 2002, the McBrides filed their 2001 City income tax return (the "2001 Return"). The 2001 Return shows total income of $1,666, with income tax due of $29.

5) On April 17, 2003, the McBrides filed their 2002 City income tax return (the "2002 Return"). The 2002 Return shows total income of $2,228, with income tax due of $39.

[Adv. Doc. 58, Exs. 2–6 (collectively the "City Tax Returns")].

During these tax years, the McBrides used a trust arrangement referred to as a "CBO" system. The McBrides allege that they used the system upon the advice of their trusted accountant, Wilson Graham. The system relied on by the McBrides has been discredited as an "abusive trust arrangement" by the Internal Revenue Service ("IRS") as described in IRS Notice 97–24 (1997—16 I.R.B. 6) [Attached as Ex. 1 to Adv. Doc. 58].

On February 11, 2003, the United States Tax Court found the McBrides' 1998 federal taxes to be deficient in the amount of $121,524 (plus penalties) and their 1999 taxes to be deficient in the amount of $136,665 (plus penalties) [*Id.*, Ex. 7]. In a subsequent May 25, 2006 decision, the Tax Court found the McBrides to have deficiencies in their federal income tax due for the taxable years 2000, 2001 and 2002 in the amounts of $31,099, $33,259 and $44,639 respectively [*Id.*, Ex. 8, p. 1]. The Tax Court further held, as agreed to by the McBrides:

> It is further stipulated that the parties agree that: the JDM Asset Management Company (TIN 31–xxxxxxx) and the McBride Charitable Trust (TIN 31–xxxxxxx) and the TAM Services LLC (TIN 31–xxxxxxx) ["the Trusts"] are nominees or alter egos of petitioners; all assets held in the name of the Trusts are held by the Trusts for the benefit of the petitioners; there was no substantial change in the way business and personal matters were held before and after the formation of the Trusts; and, certain, personal living expenses of petitioners have been paid by the Trusts.

> It is further stipulated that the parties agree that the Trusts will be disregarded for Federal income tax purposes.

[*Id.*, Ex. 8, p. 2].

No party disputes that the McBrides' City tax returns for the years 1998

---

**3.** The Complaint includes allegations regarding the dischargeability of taxes owed for the year 1997, but those taxes are not raised as an issue on summary judgment.

**4.** The City asserts that the 1998 Return was filed late, but the McBrides assert that they may have been granted an extension. The City replies that the extension expired on October 31, 1999 but that the return is not stamped as received until November 24, 1999 [Adv. Doc. 63, ¶ 5]. Consequently, it appears that the 1998 Return was filed late.

through 2002 were based on the deficient federal income tax returns for those same years. The City calculated the adjusted income and tax due for those years as follows and sent an assessment letter to the McBrides in August of 2005 giving them notice of the actual amount of taxes owed:

1) 1998—taxable income $188,472, income tax of $3,298.

2) 1999—taxable income $212,348, income tax of $3,716.

3) 2000—taxable income $129,657, income tax of $2,269.

4) 2001—taxable income $142,773, income tax of $2,499.

5) 2002—taxable income $166,702, income tax of $2,917.

[*Id.*, Ex. 10].[5] The City asserts that, in total, the McBrides failed to report approximately 98% of their income and approximately 98% of their income tax due for the years in dispute.[6]

### SUMMARY JUDGMENT STANDARD

The appropriate standard to address the City's motion for summary judgment is contained in Fed.R.Civ.P. 56 and incorporated in bankruptcy adversary proceedings by reference in Fed. R. Bankr.P. 7056. Rule 56(a) provides that summary judgment is to be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the non-moving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–32, 106 S.Ct. 2548. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586–88, 106 S.Ct. 1348. Nonetheless, mere conclusory allegations or unsupported opinions of the nonmovant are insufficient to defeat a motion for summary judgment. *Id.* See also *Blaney v. Cengage Learning, Inc.*, 2011 WL 1532032, at *7 (S.D.Ohio Apr. 22, 2011).

### LEGAL ANALYSIS

In general, a chapter 7 discharge relieves a debtor from the obligation to pay his or her prepetition debts. 11 U.S.C. § 727(b); *United States v. Storey*, 640 F.3d 739, 743 (6th Cir.2011). However, the Bankruptcy Code specifically excepts from discharge the debts outlined in 11 U.S.C. § 523. *See* 11 U.S.C. § 727(b). The § 523 exceptions to discharge are to

---

**5.** The McBrides neither admit nor deny the income and tax calculations presented by the City [Adv. Doc. 59, p. 5, ¶ 13].

**6.** In response, the McBrides allege that, at the time the City tax returns were filed, they

believed the trust system was legitimate and that they appropriately reported their income and paid the taxes they calculated to be due [Adv. Doc. 59, ¶ 13].

be strictly construed in favor of debtors. *Storey*, 640 F.3d at 743.

The City asserts that the tax obligations owed to it by the McBrides are excepted from discharge under one of the § 523 categories. On summary judgment, the City argues that the tax obligations fall under 11 U.S.C. § 523(a)(1)(B) which states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> * * *
>
> (B) with respect to which a return, or equivalent report or notice, if required—
>
>> (i) was not filed or given; or
>>
>> (ii) was filed or given after the date on which such return, report or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]

11 U.S.C.A. § 523(a)(1)(B)(i) and (ii). Subsection (i) of § 523(a)(1)(B) excepts from discharge tax liabilities for which the debtor never filed or gave a return. *Pendergast v. Mass. Dept. of Revenue (In re Pendergast)*, 510 B.R. 1, 7 (B.A.P. 1st Cir. 2014). Subsection (ii), on the other hand, deals with tax liabilities for which the debtor filed a return, but the filing was untimely. *Id.* Subsection (ii) describes what has been termed the "two year rule" excluding from discharge taxes for which a return was filed after its due date but only if the return was filed within two years of the bankruptcy filing. *Id.*

In this case, the tax obligations owed by the McBrides to the City do not fall under subsection (ii) because most of the McBrides' City tax filings were timely and the one that was not timely, that for 1998, was filed more than two years before the McBrides' bankruptcy. Instead, the City asserts that the taxes owed by the McBrides are nondischargeable under § 523(a)(1)(B)(i) because the McBrides never filed qualifying returns. According to the City's argument, the McBrides' tax filings do not constitute returns for § 523(a) purposes because: 1) all of the returns at issue omitted significant portions of the McBrides' income and corresponding tax obligation; and 2) one of the returns was filed late.[7] The City's argument requires the court to determine what qualifies as a "return" for purposes of § 523(a)(1)(B)(i).

Until the passage of the Bankruptcy Abuse Prevention and Consumer Protec-

---

**7.** The McBrides argue that the City has waived or is estopped from arguing that the relevant tax documents are not returns under § 523(a) because, before the bankruptcy filing, the City accepted payments under a deferred payment arrangement that required all tax returns to be filed [Adv. Doc. 59, p. 7]. The McBrides' argument is without merit. Citing the same cases as cited by the McBrides, waiver requires an intentional relinquishment or abandonment of a known right. *United States v. Osborne*, 402 F.3d 626, 630 (6th Cir.2005). The McBrides cite to no City Tax Code provision or other statement by the City indicating that by its acceptance of payments, it intentionally waived its right to challenge whether a tax document constituted a return for an entirely different purpose, i.e. the non-dischargeability of taxes in a future bankruptcy. Furthermore, estoppel requires a misrepresentation and reasonable reliance thereon. *Michigan Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir.2004). The McBrides point to no statement by the City that could constitute a misrepresentation and, instead, rely solely on the City's acceptance of payments prior to a bankruptcy being filed. Again, there is nothing cited by the McBrides to suggest that the City misrepresented its position in a possible future bankruptcy case through its acceptance of payments under a deferred tax arrangement nor do the McBrides city any legal authority for such a proposition.

tion Act of 2005 ("BAPCPA"), neither the Bankruptcy Code nor the Internal Revenue Code provided a formal definition of a tax "return." *United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029, 1032–33 (6th Cir.1999) (noting that the Internal Revenue Code does not provide a definition nor does it explain how accurate, thorough, or complete the requisite. form must be in order to qualify as a return). In the absence of a statutory definition, the majority of courts applied a four-factor test articulated by the United States Tax Court in *Beard v. Commissioner,* 82 T.C. 766, 777–78 (1984) and officially adopted by the Sixth Circuit in *United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029 (6th Cir.1999). In order for a document to qualify as a return under the Beard test:

> (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

*Hindenlang,* 164 F.3d at 1033. Prior to BAPCPA, courts tended to focus on the fourth element and conflicts existed among the courts regarding whether the "honest and reasonable attempt" inquiry was limited to the form and content of the purported return or whether it also encompassed the untimeliness of the filing. *Martin v. Internal Revenue Service (In re Martin),* 508 B.R. 717, 723–24 (Bankr.E.D.Ca.2014) (discussing the conflict). In *Hindenlang,* which focused on a federal tax return, the Sixth Circuit determined that the untimeliness of the filing is considered within the fourth element, i.e. whether the debtor's untimely filing of the return still amounts to an honest and reasonable attempt to satisfy the requirements of federal tax law. *Hindenlang,* 164 F.3d at 1034. The Sixth Circuit concluded that an untimely federal

tax return could still be a "return" unless it was filed so late that the IRS had gone through the procedure of making a formal assessment of the deficiency. *Id.* at 1034. At that point, the filing of the return "no longer serves any tax purpose" and, consequently, cannot constitute "an honest and reasonable attempt to satisfy the requirements of the tax law." *Id. See also In re Payne,* 431 F.3d 1055 (7th Cir.2006) (following *Hindenlang).* Other courts disagreed with *Hindenlang* and concluded that the delinquency of the filing was not a factor in determining whether a filed tax document was a return. *See, e.g., Colsen v. United States (In re Colsen),* 446 F.3d 836, 840–41 (8th Cir.2006) (determining that post-assessment filings may still serve a tax purpose and be returns if they evince an honest and genuine attempt to satisfy the law). Instead, these courts concluded that the "honesty and genuineness" of the filer's attempt to satisfy tax laws should be determined from the face of the document itself. *Id.*

With the 2005 BAPCPA amendments, it is presumed that Congress attempted to clarify by providing a definition of a return in a hanging paragraph that this court will refer to as § 523(a)(*). This subsection states:

> For purposes of [§ 523(a) ], the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C.A. § 523(a)(*). The first sentence of the hanging paragraph sets the general definition that to be a return for § 523(a) purposes, the document must satisfy the requirements of applicable nonbankruptcy law including applicable filing requirements. *Id.* What remains unclear, however, is what aspects of the applicable nonbankruptcy law and its filing requirements must be satisfied. Is § 523(a)(*) pointing to the definitional provisions in state or local tax law to define "return" for § 523(a) purposes or, instead, must the document satisfy *all* aspects of the relevant nonbankruptcy tax law, including filing requirements, in order to be a "return"? Instead of ending the ambiguity, this hanging paragraph added by BAPCPA has created new disagreements among the courts. *Martin,* 508 B.R. at 724 (discussing the ongoing dispute in the courts); *Perkins v. Mass. Dept. of Revenue (In re Perkins),* 507 B.R. 45, 49 (D.Mass.2014), *aff'd,* 779 F.3d 1 ("Far from achieving its clarifying purpose, [§ 523(a)(*)] stirred more controversy about whether a document qualifies as a return.").

While their opinions differ, most courts addressing § 523(a)(*) have dealt with similar factual scenarios involving late-filed tax documents. In this context, courts focus on whether a tax document must be timely filed in accordance with the relevant tax code's deadlines to be a return and whether the pre-BAPCPA *Beard* test continues to have relevance. *Briggs v. United States (In re Briggs),* 511 B.R. 707, 713 (Bankr.N.D.Ga.2014).

The City favors the bright-line test adopted by the Fifth Circuit in *McCoy v. Miss. State Tax Comm'r (In re McCoy),* 666 F.3d 924 (5th Cir.2012) and followed in the First and Tenth Circuits. *Fahey v.* *Mass. Dept. of Revenue (In re Fahey),* 779 F.3d 1 (1st Cir.2015); *Mallo v. Internal Revenue Service (In re Mallo),* 774 F.3d 1313 (10th Cir.2014). These courts construe § 523(a)(*) and its reference to "applicable nonbankruptcy law (including applicable filing requirements)" to require a document to fully comply with all filing requirements of the relevant tax code, including deadlines, in order to constitute a "return" regardless of whether a late filing would be acceptable as a return under the relevant law. *See Fahey,* 779 F.3d at 9 (noting that a Massachusetts law setting a date by which a tax return "is required to be filed" is a "filing requirement"); *Mallo,* 774 F.3d at 1321 ("We agree with these decisions and hold that, because the applicable filing requirements include filing deadlines, § 523(a)(*) plainly excludes late filed Form 1040s from the definition of a return."); *McCoy,* 666 F.3d at 932; *Links v. United States (In re Links),* 2009 WL 2966162, at *5 (Bankr.N.D.Ohio 2009). Consequently, a tax document that is substantively correct but is filed even one day late does not comply with the relevant tax code's filing requirements, does not constitute a "return" for § 523(a)(*) purposes, and consequently, the corresponding tax obligation is nondischargeable under § 523(a)(1). *Fahey,* 779 F.3d at 5. *See also Martin,* 508 B.R. at 726–27 (describing *McCoy's* interpretation and its consequences). The only exception for late filed returns recognized by this group of cases is the narrow exception explicitly described in the second sentence of § 523(a)(*) for certain returns prepared by the Internal Revenue Service under 26 U.S.C. § 6020(a) or under similar state or local tax laws.[8] *Fahey,* 779 F.3d at 5–7; *Mallo,* 774 F.3d at 1323–24.

---

**8.** Per the second sentence of 11 U.S.C. § 523(a)(*), the term "return" specifically includes returns prepared pursuant to 26 U.S.C.

§ 6020(a), or similar state or local law, but excludes returns prepared pursuant to 26

While this bright-line approach to the meaning of "return" in § 523(a)(*) has gained favor in these circuits, the interpretation has been criticized by other courts as doing "too much violence to the statute" when read in conjunction with the dischargeability provisions of § 523(a)(1). *Briggs*, 511 B.R. at 714. Because most late filed returns would not qualify as returns under the bright-line approach, the "two-year" rule found in § 523(a)(1)(B)(ii) for late filed returns is rendered almost meaningless. *Fahey*, 779 F.3d at 13 (dissent noting that with BAPCPA's changes, there was "no point in leaving in Subsection (ii)—the specific exception that deals with late filers—if Congress meant for the hanging paragraph to penalize everyone who misses filing deadlines"); *Martin*, 508 B.R. at 728–29 ("... if the hanging paragraph is interpreted to make timely filing a requirement in the definition of a tax return, thus excluding all returns that are not filed on time, then a creditor has no need to ever resort to the two-year rule long recognized in § 523(a)(1)(B)(ii), given that § 523(a)(1)(B)(i) would suffice to disqualify all untimely returns."). Courts adopting the bright-line approach cling to § 523(a)(*)'s exception allowing a late filed

tax document to qualify as a return, and consequently be subject to the "two year rule," if it is prepared pursuant to 26 U.S.C. § 6020(a) or similar state or local laws. *See Fahey*, 779 F.3d at 5–7; *Mallo*, 774 F.3d at 1323–24. However, the Internal Revenue Service's Chief Counsel has referred to this exception as "illusory" because of the "minute" number of § 6020(a) returns prepared by the IRS and the fact that taxpayers have no right to demand a return under this provision. *Fahey*, 779 F.3d at 6–7. *See also Briggs*, 511 B.R. at 715 ("The number of returns prepared under [§ 6020(a)] ... is minimal and the returns are prepared at the taxing agency's discretion."). Furthermore, this approach leads to the absurd result of rendering nondischargeable a tax debt of a person who files his or her return one day late while permitting the obligation to be discharged if the "scofflaw ... sits on his hands at tax time, doesn't bother to file a return, and then, after getting caught, cooperates with the authorities and lets the government file the substitute return for him [pursuant to § 6020 or similar laws]...." *Fahey*, 779 F.3d at 15 (dissent). Even the IRS has expressed a lack

·U.S.C. § 6020(b), or similar state or local law. In turn, 26 U.S.C. § 6020 provides:

(a) **Preparation of return by Secretary.**—If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being·signed by such person, may be received by the Secretary as the return of such person.

(b) **Execution of return by Secretary.**—

(1) **Authority of Secretary to execute return.**—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such re-

turn from his own knowledge and from such information as he can obtain through testimony or otherwise.

(2) **Status of returns.**—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020. Returns prepared pursuant to either § 6020(a) or (b) are, by definition, late returns. *Briggs*, 511 B.R. at 714–15. The difference is the level of participation and cooperation of the taxpayer. Section 6020(a) allows the IRS to prepare a return with the consent ·and cooperation of the taxpayer and requires the taxpayer to consent to disclosure all necessary information to prepare the return while a § 6020(b) return is prepared without the taxpayer's cooperation or participation. *Id.*

of support for this bright-line approach. *See Martin,* 508 B.R. at 727.

The bright-line approach, requiring a tax document to fully satisfy the relevant nonbankruptcy law and filing requirements in order to qualify as a return, becomes even more troubling when applied to other tax return deficiencies. Take, for example, the taxpayer who negligently fails to report a small source of income on his or her return. Certainly, most if not all tax codes include a mandate for reporting income on a return and, in the case at hand, the City of Kettering points to provisions in the City of Kettering Tax Code ("City Tax Code") § 191.05 requiring the return to set forth aggregate compensation or earnings amounts and the corresponding amount of tax imposed. [Adv. Doc. 58, p. 10 & Exs. 11 and 12]. Under the bright-line approach advocated by the City, this mandate is part of the "applicable non-bankruptcy law" that must be fully satisfied for the tax document to qualify as a return under § 523(a)(*). Does this mean that a negligent mistake in reporting income could render the taxpayer's return not a return making the corresponding tax debt nondischargeable even though the actual dischargeability provision of 11 U.S.C. § 523(a)(1)(C) requires the error to rise to the level of fraud or a willful attempt to evade or defeat a tax? The bright-line approach, if taken to its logical end, could eviscerate the nondischargeability provision for fraud and willful tax evasion by declaring that tax returns with even negligent errors are not returns under the definitional provision of § 523(a)(*).

This troubling analysis has led some courts to reject the bright-line approach noting that the simplest meaning to be given to the hanging paragraph's reference to "applicable nonbankruptcy law (including applicable filing requirements)" is that such applicable law is to provide a definition of a tax return for purposes of § 523(a)'s nondischargeability provisions. *See Martin,* 508 B.R. at 730 (concluding that § 523(a)(*) contemplates timely filing as a required component of the definition of a return only if the relevant tax statutes, regulations, or tax law provide such a requirement in their definition of a return). *See also Briggs,* 511 B.R. at 714–16; *Rhodes v. United States (In re Rhodes),* 498 B.R. 357, 365–67 (Bankr.N.D.Ga.2013). Consequently, if the document filed with the federal, state, or local taxing authority meets the applicable tax code's definition of an acceptable return (including filing requirements to the extent they are part of the definition) it is a return under § 523(a)(*) even if the document does not fully comply with all aspects of the relevant tax code.

 After careful review, the court rejects the bright-line approach requiring a document to comply with all aspects of a tax code's requirements. Instead, the court holds that § 523(a)(*) requires the court to look to relevant nonbankruptcy law to determine what qualifies as an acceptable return under that law. This approach is consistent with the plain language of § 523(a)(*), preserves the viability of the nondischargeability provisions for taxes found in §§ 523(a)(1)(B)(ii) and (a)(1)(C), and is consistent with the long-standing principle that § 523 exceptions to discharge are to be strictly construed in favor of the debtor. *Storey,* 640 F.3d at 743. It also takes into account that tax codes do not generally require a perfectly prepared tax document, compliant with all aspects of the tax code and its filing requirements, in order for that document to qualify as a return. *Badaracco v. Commissioner,* 464 U.S. 386, 396–97, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) ("a document which on its face plausibly pur-

ports to be in compliance, and which is signed by the taxpayer, is a return despite its inaccuracies").

With that the court turns to whether the McBrides' tax documents qualify as returns pursuant to § 523(a)(*). The court begins its analysis with the "applicable nonbankruptcy law" which is the City Tax Code. While the City Tax Code includes various reporting requirements and a deadline (City Tax Code § 191.05), the City points to no formal definition of what qualifies as an acceptable "return" in the City Tax Code nor is one found in its definitional section. See Tax Code § 191.02. Furthermore, the City Tax Code contains no explanation of how accurate, thorough, or complete a form must be to qualify as a return nor does it specify when a late form will no longer qualify as a return under the tax law. See Hindenlang, 164 F.3d at 1033 (making a similar analysis).

Without a formal definition of return in the applicable tax law, the court must look to another source for determining whether the McBrides' tax documents qualify as returns. In Hindenlang, the Sixth Circuit was confronted with a similar scenario: defining what constitutes a "return" for § 523(a)(1) purposes when neither the Bankruptcy Code nor the applicable tax law, the Internal Revenue Code, contained a formal definition of the word nor explained how accurate, thorough, or complete a form must be in order to qualify as a return. Id. Without a formal definition, the Sixth Circuit applied the four-part Beard test to determine whether a tax form qualified as a federal tax return: 1) it must purport to be a return; 2) it must be executed under penalty of perjury; 3) it must be contain sufficient data to allow calculation of tax; and 4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law. Id. While the Sixth Circuit specifically did not address how a return should be defined under state or local law (Hindenlang, 164 F.3d at 1033 n. 4), other courts have extended the Beard test to state and local tax documents. See, e.g., Maryland v. Ciotti (In re Ciotti), 638 F.3d 276, 280 (4th Cir.2011) (applying the Beard test to a state required "report"); Moffitt v Commonwealth of Mass. (In re Moffitt), 2013 WL 5441984, at *2 (Bankr.W.D.Ky. Sept. 27, 2013) (applying Beard/Hindenlang to tax documents filed under Massachusetts state law).

 Likewise, this court finds it appropriate to turn to the Beard test to determine what constitutes a "return" under § 523(a)(*) when the applicable tax code does not provide a formal definition. Applying the four-part test to the facts on summary judgment, no one appears to question that the McBrides used the correct tax forms and that they were executed appropriately [See Adv. Doc. 58, Exs. 2–6]. However, the remaining factors are in dispute. The City contends that the McBrides failed to report 98% of their income and, consequently, did not provide the data necessary to calculate tax. The City further argues that the McBrides' significant omission of income and tax does not represent an honest and reasonable attempt to satisfy the requirements of tax law.[9] In response, Tom McBride attests

9. Alternatively, the City argues that the McBrides' returns do not qualify as returns because the City was forced to make adjusted calculations of the McBrides' tax obligations much akin to a § 6020(b) return prepared by the IRS and specifically excluded from the definition of "return" in 11 U.S.C. § 523(a)(*). As noted in a prior footnote, a § 6020(b) return is a return prepared by the IRS after a person either fails to file a return or "makes, willfully or otherwise, a false or fraudulent return." 26 U.S.C. § 6020(b). On

that the tax system they used to prepare the returns at issue was a system promoted by their long-term and trusted accountant, Wilson Graham, and that the returns they prepared contained what they believed to be legitimate income and tax obligation amounts and they promptly paid what they thought was due [Adv. Doc. 59, Ex. A].

As noted in *Hindenlang*, " '[I]t is clear that the existing tax system could not function properly if the great majority of taxpayers did not report the correct amount of tax without the government's prior determination of tax liability.' " 164 F.3d at 1033 (further citation omitted). While no one disputes that the tax reported on the McBrides' tax documents was incorrect, issues of fact exist regarding the McBrides' intent and alleged reliance on an accountant when underreporting their income and tax obligation and the parties have not fully addressed how those issues impact the third and fourth elements of the *Beard* test. Furthermore, the facts do not specify how late the McBrides' one untimely filing was which has implications under the *Beard* test.[10] Because the court cannot determine on summary judgment whether the McBrides' original City tax documents[11] qualify as tax returns under

the *Beard* test, summary judgment is **DE-NIED.**

**SO ORDERED.**

---

summary judgment, it is not clear whether the City ever prepared a return for the McBrides nor have the parties analyzed whether the assessment letter sent to the McBrides is sufficiently akin to a § 6020(b) return so that it falls under the exclusion in § 523(a)(*). Consequently, the matter cannot be resolved on summary judgment.

**10.** Although the parties did not fully address the untimeliness of the McBrides' one late filing, it appears that it was not so late that the City went through an assessment procedure.

**11.** On summary judgment, the parties focus on the McBrides' original tax documents filed

with the City for the tax years at issue. Unclear to the court, however, is whether the McBrides filed amended returns with the City, as required by the City Tax Code, upon a final determination of a change in federal tax liability that impacts the taxpayer's City liability [See Adv. Doc. 58, Ex. 11, City Tax Code § 191.05(E) (1988) and Ex. 12, City Tax Code § 191.05(G) (2000) ]. The failure to file amended returns when required by applicable tax laws may render the corresponding tax debt nondischargeable. *See, e.g., State of Maryland v. Ciotti (In re Ciotti),* 638 F.3d 276 (4th Cir.2011); *Moffitt v. Commonwealth of Mass. (In re Moffitt),* 2013 WL 5441984 (Bankr.W.D.Ky. Sept. 27, 2013).